# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                            No. CR 24-1346 JB

PAUL JESSEN, JR.,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for a Bill of Particulars, filed June 14, 2025 (Doc. 39)("Motion for a Bill of Particulars"); and (ii) the Defendant's Motion to Dismiss Indictment for Outrageous Government Conduct and Violation of Defendant's Fifth and Fourteenth Amendment Rights of Due Process, filed June 16, 2025 (Doc. 40)("MTD"). The primary issues are: (i) whether the Court should order the United States to provide a bill of particulars, because the indictment is too vague to inform Defendant Paul Jessen Jr., of the nature of the charges against him; (ii) whether the Court should dismiss Jensen's Indictment, filed September 24, 2024 (Doc. 1), because the Drug Enforcement Agency's manipulation of Jessen -- instructing R.W. to lure Jessen into a meeting by falsely claiming that R.W.'s life was in danger -- constitutes outrageous government conduct; and (iii) whether the Court should dismiss Jensen's Indictment under its supervisory powers for this same conduct, because the DEA's investigation exceeds the permissible bounds of lawful conduct by law enforcement. The Court concludes that: (i) a bill of particulars is necessary to clarify which Grand Jury investigation Jensen is accused of obstructing in Count 1, but is not necessary to further detail his role in the offense; (ii) dismissal is not necessary on due process grounds, because the United States' conduct is not outrageous, given that Jessen was already alleged to have obstructed justice

before his meeting with R.W; and (iii) dismissal under the Court's supervisory powers is not justified, because the United States' efforts to arrange the January 6, 2022, meeting -- during which informant R.W. sought additional evidence of Jessen's obstruction of justice -- does not violate Jessen's rights, undermine judicial integrity, nor contravenes the law. The Court therefore grants in part and denies in party Jessen's Motion for a Bill of Particulars and denies Jessen's MTD.

## FACTUAL BACKGROUND

The Court takes its background facts from the MTD. It recites them solely for context and not as findings of fact. The court does not determine the truth of these facts.

On July 8, 2021, members of the Federal Bureau of Investigation's Violent Gang Task Force -- including Bernalillo County Sheriff's Office ("BCSO") Deputies Jessen and Kyle Linker, and FBI Agent Bryan Acee -- execute a search warrant at R.W.'s residence. See MTD at 2-3. During the search, officers recover narcotics. See MTD at 3. Following the search, R.W. agrees to cooperate with law enforcement and begins working as a confidential informant for the BCSO. See MTD at 3.

In the fall of 2021, task force officers and DEA agents begin investigating a suspected drug trafficker, Ada Chouinard. See MTD at 3. On November 15, 2021, an undercover DEA task force officer conducts a controlled purchase of narcotics from Chouinard. See MTD at 3. DEA agents plan a second controlled buy for November 17, 2021. See MTD at 3. Before the transaction, the agents contact Linker to conduct a deconfliction check[1] to ensure no overlapping operations are

---

[1] "*Event deconfliction* is the process of determining when law enforcement personnel are conducting an event in close proximity to one another at the same time. Events include law enforcement actions, such as undercover operations, surveillance, and executing search warrants. When certain elements (e.g., time, date, location) are matched between two or more events, a conflict results. Immediate notification is made to the affected agencies or personnel regarding the identified conflict." What is Event Deconfliction?, Department of Justice Office of Justice Programs, https://ncirc.bja.ojp.gov/event-deconfliction (last visited November 3, 2025).

occurring in the area.  See MTD at 3.  The November 17, 2021, controlled buy proceeds as planned. See MTD at 2-3.

DEA agents organize a third controlled purchase for November 23, 2021.  See MTD at 3. Before that buy, the agents again contacted Linker for deconfliction.  See MTD at 2-3.  After receiving the call, Linker contacts R.W., and warns him that the DEA is monitoring him and planning another controlled purchase.  See MTD at 2-3.  Acting on this information, R.W. -- who oversees Chouinard's drug distribution -- cancels the transaction Chouinard has arranged with undercover DEA officers.  See MTD at 3.

Suspecting that Linker has disclosed sensitive information, DEA investigators obtain cellular telephone toll records for both R.W. and Chouinard, which reveal frequent communication between R.W. and Linker.  See MTD at 4.  Based on that information, investigators secure a search warrant for R.W.'s residence.  See MTD at 4.  When the DEA agents execute the warrant on December 16, 2021, agents seize methamphetamine and firearms.  See MTD at 4.  During questioning, R.W. admits that Linker warns him about the DEA investigation in November 2021. See MTD at 4.  R.W. then agrees to serve as a DEA informant in an investigation into Linker's disclosure of confidential information.  See MTD at 4.

At the DEA's direction, R.W. places several recorded calls to Linker.  See MTD at 4.  In these calls, Linker confirms that DEA agents are investigating R.W., advises him to shut down his operations, and tells him to maintain a low profile.  See MTD at 4.  Linker also instructs R.W. not to contact him for a while to avoid detection and tells him to reach out to Jessen instead if he needs assistance.  See MTD at 4.

Between December 27, 2021, and January 5, 2022, acting under DEA supervision, R.W. sends ten text messages and places two telephone calls to Jessen.  See MTD at 4.  On January 4, 2022, at the DEA's direction, R.W. sends Jessen a message stating: "Hey what's going on I'm being

threatened here man they got a hit on me and I don't know what the fuck to do give me a call please."  MTD at 4.  Later that day, R.W. sends another message: "Hey what's going on this is Rod, Word on the street is that there is a hit on me I don't know what the fuck to do give me a call please."  MTD at 4.  Jessen replies, "I'll give you a call tomorrow morning."  MTD at 4.

On January 5, 2022, Jessen calls R.W.  See MTD at 4.  During the call, they agree to meet in person the following day.  See MTD at 4.  The meeting occurs on January 6, 2022.  See MTD at 4.

## PROCEDURAL BACKGROUND

On September 24, 2024, the Grand Jury returns a five count Indictment against Jessen.  See Indictment at 1, filed September 24, 2024 (Doc. 1).  Count 1 charges Jessen with conspiring to obstruct a Grand Jury investigation, in violation of 18 U.S.C. § 1512(c)(2).  See Indictment at 1.  Count 2 charges Jessen with obstructing a Grand Jury investigation on November 23, 2021, in violation of 18 U.S.C. § 1512(c)(2).  See Indictment at 2.  Count 3 charges Jessen with obstructing a Grand Jury investigation on December 16, 2021, in violation of 18 U.S.C. § 1512(c)(2).  See Indictment at 3.  Count 4 charges Jessen with making false statements to the FBI on January 20, 2022, specifically, that Jessen has no personal knowledge that Linker obstructs the DEA investigation of R.W.  See Indictment at 2.  Count 5 charges Jessen with making false statements to the FBI on March 22, 2022, by denying that he is present for the telephone conversation between Linker and R.W.  See Indictment at 3.

On June 14, 2025, Jessen files a Motion for a Bill of Particulars, requesting that the Court order the United States to specify his alleged involvement in the conspiracy to obstruct justice between November 17, 2021, and January 21, 2022.  See Motion for a Bill of Particulars at 1.  Jessen contends that a bill of particulars is necessary because the Indictment includes only broad

allegations of Jessen's alleged involvement in the two-month conspiracy to obstruct the official Grand Jury investigation.  See Motion for Bill of Particulars at 4.

On June 30, 2025, the United States files Government's Response to Defendant's Motion for a Bill of Particulars (Doc. 43)("Bill of Particulars Response").  In its Bill of Particulars Response, the United States contends that the Court should deny Jessen's Motion for Bill of Particulars because a Bill of Particulars is not a discovery device.  See Response to Bill of Particulars at 1.  Specifically, the United States asserts that a Bill of Particulars is unnecessary, because the Indictment, discovery, and parties' communications provide Jessen sufficient notice of the theory of the United States' case.  See Bill of Particulars Response at 2.

On July 24, 2025, Jessen files his Reply to Response to Paul Jessen's Motion for a Bill of Particulars (Doc. 47)(" Bill of Particulars Reply").  Jessen maintains that neither the Indictment, the discovery, nor the parties' communications provide him with the requisite notice the Bill of Particulars provides.  See Bill of Particulars Reply at 2.  As a result, Jessen contends a Bill of Particulars specifying the acts Jessen engages in to support the conspiracy and, even more importantly, when the conspiracy begins is necessary.  See Bill of Particulars Reply at 4.

On June 16, 2025, Jessen files his MTD for Outrageous Government Conduct, alleging violations of his Fifth and Fourteenth Amendment due process rights.  See MTD at 1.  Jessen argues that the DEA manipulates him by instructing R.W. to lure him into a meeting under false pretenses, namely, that there is a hit out on R.W.'s life.  See MTD at 9.  Jessen's second argument is that the Court should dismiss the Indictment under its supervisory powers, because the DEA's conduct investigating fellow "law enforcement officers was undeniably unacceptable in a civil

society." MTD at 9.  Again, Jessen contends that this undeniably unacceptable conduct is the DEA instructing R.W. to use a death threat to lure Jessen into meeting with him.  See MTD at 16.

On June 30, 2025, the United States files Government's Response to Defendant's Motion to Dismiss for Outrageous Government Conduct (Doc. 44)("MTD Response").  In the MTD Response, the United States argues that the alleged conduct occurs after Jessen's criminal acts and therefore cannot support an outrageous-conduct defense.  See Response to MTD at 3.  The United States also contends that, even if its actions influence Jessen's conduct, his predisposition to commit similar crimes renders its actions reasonable.  See MTD Response at 5.  Finally, it argues that dismissal under the Court's supervisory powers is inappropriate, because Jessen's rights are not violated, judicial integrity is not implicated, and the DEA's efforts to arrange the January 6, 2022, meeting are lawful.  See MTD Response at 10.

On July 24, 2025, Jessen files Defendant Paul Jessen's Reply to Government's Response to Defendant's Motion to Dismiss for Outrageous Government Conduct (Doc. 48)("MTD Reply").  Jessen disputes the United States' assertion that he already obstructs justice and is predisposed to commit the offense, arguing that no Grand Jury investigation into his conduct exists at the time of his meeting with R.W.  See MTD Reply at 3.  He further contends that the Court should exercise its supervisory powers to dismiss the Indictment, because the United States' conduct violates his fundamental due process rights and tolerating such conduct erodes public confidence in the administration of justice.  See MTD Reply at 7.

## LAW REGARDING BILLS OF PARTICULARS

Rule 7(c) of the Federal Rules of Criminal Procedure states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  For each count, the indictment also must give the official or customary citation of the statute that the defendant is alleged to have violated.  See Fed. R. Crim.

P. 7(c).  An indictment is sufficient if it: (i) contains the charged offense's elements and fairly informs a defendant of the charge against which the defendant must defend; and (ii) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Bedonie, 913 F.2d 782, 790 (10th Cir. 1990).  Tracking the statue's language generally is sufficient as long as the indictment sets forth the offense's elements and provides a statement of facts that informs the defendant of the specific offense.  See Hamling v. United States, 418 U.S. at 117-18; United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir.1988).  An indictment need not allege in detail the factual proof on which the United States relies on to support the charges.  See United States v. Dunn, 841 F.2d at 1029.

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the court to direct the United States to file a bill of particulars. Rule 7(f) provides:

> The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).

The courts have "very broad discretion in ruling upon requests" for bills of particulars. Will v. United States, 389 U.S. 90, 99 (1967).  A Bill of Particular's purpose is to inform the defendant of the charges against the defendant with sufficient precision to allow the defendant to prepare a defense.  See United States v. Ivy, 83 F.3d 1266, 1281 (10th Cir. 1996).

> The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.

United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988).  "A bill of particulars is not necessary if the indictment sets forth the elements of the offense charged and sufficiently apprised the

defendant of the charges to enable him to prepare for trial." United States v. Levine, 983 F.2d 165, 167 (10th Cir. 1992). The United States Court of Appeals for the Tenth Circuit states that a defendant "is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case," United States v. Ivy, 83 F.3d at 1281, for a bill of particulars "is not a discovery device," United States v. Dunn, 841 F.2d 1026, 1029 (10th Cir. 1988).

In United States v. Dunn, the indictment quotes 21 U.S.C. § 846's language and includes the illegal activity's dates, the place, and the specific controlled substance. See 841 F.2d at 1029. The defendant requests a bill of particulars for the United States to state with specificity the manner in which and when the defendant conspires with an alleged co-conspirator, and the date, time, place, witnesses, and circumstances concerning the alleged conspiracy. See 841 F.2d at 1029. The Tenth Circuit affirms the district court's denial of a bill of particulars, and hold that an indictment need not go further than setting forth the offense charge's elements and need not allege "in detail the factual proof that will be relied upon to support the charges." 841 F.2d at 1029 (citing United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978), cert. denied, 439 U.S. 1069 (1979)). In United States v. Barbieri, 614 F.2d 715 (10th Cir. 1980), the defendant moves for a bill of particulars setting forth "the specific event, facts, conduct, or circumstances upon which the allegations in the indictment are based." United States v. Barbieri, 614 F.2d at 719. The Tenth Circuit upholds the district court's denial of the motion, reasoning that, because "the indictment was sufficiently complete and precise to enable Barbieri to prepare a defense and avoid prejudicial surprise at trial," the motion "appears to be an improper request for evidentiary detail." United States v. Barbieri, 614 F.2d at 719. In Wyatt v. United States, 388 F.2d 395 (10th Cir. 1968), a defendant charged with liquor-law violations moves for a bill of particulars setting forth "information as to whom the non-tax-paid whiskey was sold to, who sold it to this person, and also where the whiskey was

manufactured." 388 F.2d at 397. The Tenth Circuit holds that the district court does not abuse its discretion in denying the motion, because "the charges in the indictment set out the specific date, the specific amount of non-tax-paid whiskey involved and that the event occurred on or about a public street in Guthrie, Logan County." 388 F.2d at 397. In United States v. Tyler, 42 Fed. Appx. 186 (10th Cir.2002), the indictment identifies the quantity of drugs, and the alleged offenses' dates and general location, and, therefore, the Tenth Circuit finds that a bill of particulars was not necessary.

## LAW REGARDING OUTRAGEOUS GOVERNMENT CONDUCT

The defense of outrageous governmental conduct is based on the Due Process Clause of the Fifth Amendment. See United States v. Sneed, 34 F.3d 1570, 1576 (10th Cir. 1994). An outrageous government conduct defense is a narrow one, applicable only when "considering the totality of the circumstances in any given case, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." United States v. Johnson, 130 F.3d 1420, 1429 (10th Cir. 1997). It "is an extraordinary defense that will only be applied in the most egregious circumstances." United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992).

The Tenth Circuit holds that a defendant asserting an outrageous governmental conduct defense bears the burden of proving: (i) excessive government involvement in the creation of the crime; or (ii) significant government coercion to induce the crime. See United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). The first theory -- excessive government involvement -- exists only when the government "engineers and directs the criminal enterprise from start to finish." United States v. Dyke, 718 F.3d 1282, 1288 (10th Cir. 2013). By contrast, the government is free to "infiltrate an ongoing criminal enterprise," and "to induce a defendant to repeat or continue a crime or even to induce him to expand or extend previous criminal activity." United States v. Dyke, 718 F.3d at 1288. As part of its effort to induce a suspect to "repeat, continue, or

expand criminal activity," moreover, the Tenth Circuit said that "the government can suggest the illegal activity," "can provide supplies and expertise for the illegal activity," and "can act as both supplier and buyer in sales of illegal goods." United States v. Dyke, 718 F.3d at 1288.

Another key consideration when analyzing excessive government involvement is the defendant's past and current criminal activities. United States v. Dyke, 718 F.3d at 1288. Because the inquiry turns in part "on the connection between the crime prosecuted and the defendant's prior conduct," more aggressive law enforcement techniques are permissible against those who already have a history of engaging in related crimes than those without. United States v. Dyke, 718 F.3d at 1288. The Tenth Circuit also instructs courts to look at "how eagerly and actively the defendant himself participated in the current crime charged, often if not always finding this an important and decisive factor." United States v. Dyke, 718 F.3d at 1289.

The second theory -- significant government coercion -- exists only to governmental coercion that is particularly egregious. See United States v. Pedraza, 27 F.3d 1515, 1521 (10th Cir. 1994). Examples of government behavior that defendants argue constitute outrageous conduct include very large financial inducements, including offering narcotics at a shockingly cheap price, see United States v. Mosley, 956 F.2d 906, 912-13 (10th Cir. 1992), or, in certain situations, distribution of narcotics to a known addict, see United States v. Harris, 997 F.2d 812, 816-18 (10th Cir. 1993)(refusing to hold that government distribution of narcotics to known addicts is always coercive, but speculating that the government entering a rehabilitation center and selling heroin to a recovering addict may offend due process). Under either theory, when the government's conduct during the investigation is sufficiently outrageous, courts should not allow the government to prosecute the offense developed through the conduct, "because the prosecution in such a case

would offend the Due Process Clause of the Fifth Amendment." United States v. Pedraza, 27 F.3d at 1521.

In United States v. Mosley, the Tenth Circuit holds that the government does not engage in outrageous conduct when an agent, whom the defendant approaches purposes of purchasing marijuana, instead offers to sell the defendant cocaine. See 956 F.2d at 913. The agent's behavior does not result in the government creating the crime, because the defendant initiates the contact with the agent, has a history of trafficking marijuana and cocaine, and is given several days to decide whether to accept the agent's cocaine offer. See United States v. Mosley, 956 F.2d at 913. Likewise, in United States v. Dyke, the Tenth Circuit holds that the government does not engage in outrageous conduct despite the agent offering to exchange items like antifreeze or a fuel pump for contraband, providing counterfeiting equipment, and providing the initial batch of methamphetamine. See United States v. Dyke, 718 F.3d 1282, 1290 (10th Cir. 2013). The Tenth Circuit makes the decision in large part because the crimes the government promotes are "but cousins to the ones the defendants were already busy committing." United States v. Dyke, 718 F.3d 1290. The Tenth Circuit in United States v. Dyke, provides several extreme examples of government conduct that do not amount to outrageous to demonstrate just how difficult this defense is:

> Indeed, this court has regularly approved governmental sting operations involving governmental conduct equally (and considerably more) aggressive than anything that took place in this case. See, e.g., Pedraza, 27 F.3d at 1517-19 (government pushed a plan to smuggle 707 kilograms of cocaine); United States v. Sneed, 34 F.3d 1570, 1574-78 (10th Cir. 1994)(government set up scheme to manipulate penny stock market, netting $900,000); United States v. Warren, 747 F.2d 1339, 1343 (10th Cir. 1984)(government "staged phony accidents, prepared false accident reports and traffic tickets, and entered pleas of guilty to the falsified

charges" to convince defendant to falsify medical reports).
United States v. Dyke, at 1290.

**ANALYSIS**

The Court addresses Jessen's Motion for a Bill of Particulars and MTD in turn.  First, the Court concludes that a bill of particulars is necessary to clarify what Grand Jury investigation the United States accuses Jessen of obstructing in Count I, but it is not required to include specific facts detailing his alleged involvement in Count I.  Second, the Court concludes that the United States' conduct is not outrageous, primarily because Jessen already had engaged in much of the conduct for which the Grand Jury charges him.  Third, the Court concludes that dismissal under the Court's supervisory powers is not appropriate, because the United States' efforts to arrange the January 6, 2022, meeting neither violates Jessen's rights, undermines judicial integrity, nor contravenes the law.  The Court therefore grants in part and denies in part Jessen's Motion for a Bill of Particulars, and denies Jessen's MTD.

I.    **A BILL OF PARTICULARS IS NECESSARY SOLELY TO IDENTIFY THE SPECIFIC GRAND JURY INVESTIGATION JESSEN IS ACCUSED OF OBSTRUCTING.**

Jessen asks the Court to order the United States to provide a bill of particulars notifying him of his alleged involvement in only Count I.  See Motion for a Bill of Particulars at 1.  Count I of the Indictment states:

> Beginning on or about November 17, 2021, and continuing to on or about January 21, 2022, in Bernalillo County, in the District of New Mexico, the defendant, PAUL JESSEN, JR., knowingly, unlawfully, and willfully conspired, agreed, and acted interdependently with others known and unknown to the grand jury, to corruptly obstruct, influence, and impede, and did attempt to corruptly obstruct, influence, and impede an official proceeding, namely, a federal grand jury investigation, that would foreseeably result from an investigation conducted by the

Drug Enforcement Administration of possible violations of federal criminal laws,
in violation of 18 U.S.C. § 1512(c)(2). All in violation of l8 U.S.C. § 1512(k).

Indictment at 1.  Jessen argues that, without specific facts supporting the charged conspiracy or

identifying the relevant grand jury investigation, he cannot prepare his defense adequately.  See

Motion for a Bill of Particulars at 4.  The United States responds that Counts II, III, IV, and V of

the Indictment, along with discovery and other filings, provide sufficient notice of the charges and

the government's theory.  See Response to Bill of Particulars at 4.

Tracking the statute's language generally is sufficient to defeat a request for a bill of

particulars, so long as the indictment sets forth the offense's elements and includes a statement of

facts that informs the defendant of the specific offense.  See Hamling v. United States, 418 U.S.

87, 117-18 (1974).  Although an Indictment need not allege in detail the factual proof on which

the United States will rely to support the charges, see United States v. Dunn, 841 F.2d at 1029, it

must contain enough factual information to inform the defendant of the United States' theory of

the case so that the Defendant may prepare a defense.  See United States v. Ivy, 83 F.3d 1266, 1281

(10th Cir. 1996).  The Court concludes that the Indictment and subsequent filings provide sufficient

information regarding Jessen's involvement in the alleged conspiracy, but not sufficient

information identifying what Grand Jury investigation he is alleged to have obstructed.

First, Jessen seeks a bill of particulars identifying: (i) the specific acts in which he allegedly

engages; (ii) the nature of those acts; (iii) how law enforcement determines his involvement; (iv)

when the conspiracy begins; (v) when he joins the conspiracy; (vi) the alleged co-conspirators'

conduct; (vii) evidence of the conspiracy; and (viii) the co-conspirators' identities.  See Motion for

a Bill of Particulars at 7.  The Court disagrees that these facts are lacking.  In United States v.

Dunn, the Tenth Circuit affirms the district court's denial of a bill of particulars where the

indictment tracks the statutory language, and includes the dates, the location, and the alleged

crime's nature. 841 F.2d at 1029. Likewise, the Indictment here tracks 18 U.S.C. § 1512(c)(2)'s statutory language, which provides: "Whoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1512(c)(2). Count 1 mirrors that language, charging that "Jessen knowingly, unlawfully, and willfully conspired, agreed, and acted interpedently with others known or unknown to the grand jury, to corruptly obstruct, influence, or impede . . . an official proceeding, namely, a federal grand jury investigation . . . ." Indictment at 1.

The question is then whether Jessen has sufficient information about his involvement in the alleged conspiracy to understand the United States' theory. Considering the Indictment as a whole, the Court concludes that he has sufficient information. Specifically, (i) Count II states that, on or about November 23, 2021, Jessen knowingly, willfully, and corruptly, obstructs the Grand Jury investigation; (ii) Count III states that, on or about December 16, 2021, Jessen knowingly, willfully, and corruptly, obstructs the Grand Jury investigation; (iii) Count IV states, on or about January 20, 2022, Jessen knowingly and willfully makes false statements to the FBI; and (iv) Count V states that, on or about March 22, 2022, Jessen knowingly and willfully makes false statements to the FBI. See Indictment at 1-3. These allegations reveal the conspiracy's relevant dates, activities, and actors. While Counts IV and V explicitly identify false statements to the FBI as overt acts, Counts II and III are less specific. Nonetheless, the United States' Response to Jessen's MTD provides further detail such that a bill of particulars is unnecessary. In support of Count II, it details that on November 23, 2021, Linker texts Jessen that "I should tell [R.W.] to tip her of

hahahaha," and Jessen replies: "Do it!"  Response to MTD at 5.  In support of Count III, it details

the following text exchange:

> Linker: "What I should do is have you call [R.W] that way when they ultimately
> say I tipped [R.W] off I can show them my call logs and be like I haven't talked to
> him since that morning.
>
> Jessen: "I'll fucken do it. I still have his number."
>
> Linker: "Perfect. Plausible deniability for me because you know that's 100% what
> they going to say."
>
> Jessen: "Yup! . . . I'll call him at OS. I'm stuck doing a fed complaint now."

Response to MTD at 6.  Viewed together, the Indictment and the United States' Response to MTD

provide sufficient notice, and a bill of particulars therefore is unnecessary to describe further

Jessen's involvement in the crimes.

Jessen raises a persuasive point, however, in his Reply to Motion for a Bill of Particulars.

He argues that Count I charges him with obstructing a Grand Jury investigation that does not yet

exist, asserting that the earliest date a Grand Jury is convened is January 7, 2022, nearly two

months after the charged conduct begins.  See Reply to Motion for a Bill of Particulars at 3.  The

United States' records confirm that no Grand Jury or federal case was pending during the relevant

period.  See Reply to Motion for a Bill of Particulars at 3.  Indeed, an FBI report states:

> As a grand jury had not been convened in the DEA investigation and no federal
> case was pending, the USAO-DNM opined that the Deputy had not committed
> federal obstruction of justice violations.  In December 2021, AQ SAC Bujanda and
> ASAC Brown were briefed on the USAO-DNM's position. As the USAO-DNM
> was of the opinion that there was not a federal violation, . . .

Reply to MTD at 2.  The United States' Response to the Motion for Bill of Particulars similarly

refers only to the obstruction of DEA investigation and not the obstruction of a Grand Jury

proceeding.  See Response to Motion for Bill of Particulars at 3 ("Count One charges Jessen with

conspiring with others to obstruct the DEA's investigation from on or about November 17, 2021,

through on or about January 21, 2021.").  Thus, while the Indictment charges obstruction of a "federal grand jury investigation," it remains unclear what investigation Jessen allegedly obstructs.

The Court has "very broad discretion in ruling upon requests" for bills of particulars.  See Will v. United States, 389 U.S. 90, 99 (1967).  For example, in United States v. Aispuro, No. 08-2936 JB, 2010 WL 1404196, (D.N.M. 2010)(Browning, J.), the Court orders a bill of particulars, because the information provided to the defendants does not supply the details they need -- specifically, when they enter the conspiracy and how the United States construes the intercepted calls -- to understand the United States' theory of the case.  2010 WL 1404196, at *6.  Exercising similar discretion here, the Court requires the United States to provide a bill of particulars identifying what Grand Jury investigation Jessen allegedly obstructs.  The Court does not require the United States to produce any additional information.

## II.    THE UNITED STATES DOES NOT PARTICIPATE IN OUTRAGEOUS CONDUCT IN VIOLATION OF JESSEN'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS.

Jessen argues that the DEA exhibits shocking and outrageous conduct by using a career informant to ensnare a law enforcement officer based on a "speculative, and completely unsubstantiated belief that Jessen had been involved in tipping off R.W. to a DEA investigation of which he was a target."  MTD at 9.  He objects to the DEA instructing R.W. to lure him into a meeting by claiming that his life is in danger because of his cooperation with law enforcement.  See MTD at 5.  According to Jessen, this tactic improperly appeals to his emotions and his sense of duty as a law enforcement officer, amounting to outrageous conduct in violation of his Due Process rights.  See MTD at 9.  The United States counters that the defense is inapplicable because

several of Jessen's obstructive acts occur well before federal agents ever consider arranging the meeting with R.W.  See Response to MTD at 8.

Case law for this defense tends to focus on either excessive government involvement in the creation of the crime or significant government coercion to induce the crime.  See United States v. Pedraza, 27 F.3d at 1521.  "[I]f the defendant is already involved in criminal activity similar to the type of crime the government is attempting to induce him to commit, then the government's conduct is a less important consideration."  United States v. Dyke, 718 F.3d at 1289.  Courts must consider "how eagerly and actively the defendant himself participated in the current crime charged[.]"  United States v. Dyke, 718 F.3d at 1289.

The record shows that Jessen allegedly was engaged in conspiratorial activity before the DEA instructed R.W. to contact him.  Before the DEA instructed R.W. to reach out to Jessen, Jessen had the following communication with Linker:

> **November 23, 2021**: Linker learned that DEA was targeting C.M.-- a target Jessen was also pursuing. After speaking on the phone, Linker texted "**I should tell [R.W.] to tip her off hahahaha.**" Jessen replied, "Do it!" Linker then messaged R.W. and asked if he was talking to C.M. After R.W. confirmed that he was, Linker called R.W. Linker followed up that conversation with a text to R.W. stating, "**But you didn't hear that from me.**"

> **November 25, 2021**: Linker informed Jessen via text message that DEA was planning an operation at C.M.'s residence. Referring to the DEA agent in charge of the operation, Jessen responded, "**P[----] never called me. It would be a shame if there is nothing there.**" Linker then exchanged messages with R.W. where R.W. confirmed he had warned C.M. about the operation.

> **December 2, 2021**: Jessen discussed an upcoming operation with an FBI agent. Jessen speculated, "**Mmmmmmm they f[---]ing hitting [C.M.] those pieces of s[-- -].**" Later the same day, Linker texted R.W., "**Fairly certain [C.M.] getting hit mon or wed next week. Got a tip.**"

> **December 16, 2021**: After learning DEA was going through with a plan to search R.W.'s house, Linker and Jessen exchanged several calls and texts. In one message Jessen told Linker "**Tell [R.W.] not to sell to anyone. And go to a hotel**

**or stay with someone else for a bit.**" They then hatched a plan to tip off R.W. and avoid detection:

- Linker: **What I should do is have you call [R.W.] that way when they ultimately say I tipped [R.W.] off I can show them my call logs and be like I haven't talked to him since that morning.**

- Jessen: **I'll f[---]ing do it. I still have his number.**

- Linker: **Perfect. Plausible deniability for me because you know that's 100% what they going to say.**

- Jessen: **Yup! . . . I'll call him at OS. I'm stuck doing a fed complaint now.**

Response to MTD at 5-6 (bold in original). Jessen's alleged obstructive conduct therefore occurs before the DEA instructs R.W. to contact him. In United States v. Dyke, the Tenth Circuit concludes that the United States' actions are not outrageous, because the crimes it promotes are "cousins to the ones the defendants were already busy committing." 718 F.3d at 1290. It does not matter that the United States encourages the defendants to extend their drug trafficking operations, because the defendants already are selling drugs. See United States v. Dyke, 718 F.3d at 1290. The same reasoning applies here: it does not matter that the DEA instructs R.W. to meet Jessen to gather more evidence of obstruction when Jessen already allegedly engages in obstruction before the DEA's involvement.

Jessen nevertheless insists that the DEA's use of R.W's supposed death threat appeals to his sense of duty and is "nothing short of intolerable." Reply at 1. The Court disagrees. The Tenth Circuit upholds sting operations more aggressive than the one in this case. In United States v. Pedraza, the Tenth Circuit held that the agents convincing a defendant to import cocaine instead of marijuana and even helping him smuggle it into the country does not amount to outrageous government conduct. See United States v. Pedraza, 27 F.3d at 1518-19. In United States v. Sneed, the Tenth Circuit holds that agents setting up a scheme to manipulate the penny stock market to uncover criminal behavior is not outrageous conduct. See 34 F.3d at 1574-78. In United States v.

Warren, the Tenth Circuit holds that agents staging phony accidents, preparing false accident reports, and entering pleas of guilty to falsified charges to convince a defendant to falsify medical reports is not outrageous conduct. See 747 F.2d at 1343. Compared to those operations, asking an informant to meet Jessen under fabricated pretext does not approach the level of outrageousness.

Nor do Jessen's actions suggest a man acting from moral impulse. He argues that R.W.'s communication unfairly appeals to his sense of duty and emotion, but his behavior tells a different story. When R.W. first messages Jessen that he is the subject of a death threat, Jessen waits until the next day to call him -- a curious reaction for someone supposedly fearful for another's life. See Response to MTD at 8. Rather than instinctively responding out of concern or professional duty, Jessen tells R.W.: "We'll talk about that tomorrow, because there's some things going on on our end too, which is why I've been hesitant to communicate with you about what's going on," and "we're trying to get everything taken care of on our end." Response to MTD at 7. Those are not the words of an officer compelled by duty; they are the calculations of someone preoccupied with self-preservation.

Further, Jessen's reliance on United States v. Batres-Santolino, 521 F. Supp. 744 (N.D. Cal. 1981)(Patel, J.), is not sound. See MTD at 11. In United States v. Batres-Santolino, the DEA's conduct is outrageous, because the government supplied all the drugs, and the defendants are not involved in a drug-related enterprise until the governmental agent comes on the scene. See 521 F. Supp. at 752. Outside of DEA involvement, this case bears no resemblance to Jessen's situation. In United States v. Batres-Santolino, the government manufactures the crime for which the United States charges the defendants; here, Jessen's obstruction predates DEA involvement by weeks. The United States does not create the crime; it merely uncovers it.

In short, this case is not one of government overreach, but of a defendant caught mid-scheme. Outrageous government conduct requires behavior that shocks the conscience. What

happened here does not shock the conscience; it barely stirs it. The United States' conduct therefore does not amount to outrageous government conduct, and the United States has not violated Jessen's Due Process rights.

### III. THE COURT WILL NOT USE ITS SUPERVISORY POWER TO DISMISS JESSEN'S CHARGES.

Jessen next argues that the Court should use its supervisory powers to dismiss the Indictment. See MTD at 16. He asserts that the DEA's conduct is undeniably unacceptable in a civil society and renders the entire investigation subject to dismissal pursuant to the Court's inherent supervisory power. See MTD at 16. The Court disagrees with this argument.

A court may dismiss an indictment by relying on its supervisory powers. See United States v. Kilpatrick, 821 F.2d 1456, 1465 (10th Cir. 1987). "The supervisory powers theory is premised on the federal courts' inherent ability to 'formulate procedural rules not specifically required by the Constitution or the Congress.'" United States v. Kilpatrick, 821 F.2d at 1465 (quoting United States v. Hasting, 461 U.S. 499, 505 (1983)). The supervisory powers theory also "focuses on deterring illegality and protecting judicial integrity." United States v. Kilpatrick, 821 F.2d at 1465. If the United States' conduct does not rise to the level of a due process violation, the court may nonetheless dismiss an indictment under its supervisory powers: (i) "to remedy a constitutional or statutory violation;" (ii) "to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validity before a jury;" or (iii) "to deter future illegal conduct." United States v. Hasting, 461 U.S. at 505. Dismissal of an indictment on supervisory grounds, however, "is a drastic remedy, plainly inappropriate without full consideration and rejection of more

narrowly tailored measured to deter improper prosecutorial [or Government] conduct."  United States v. Bolain, 933 F.2d 1019, 1019 (10th Cir. 1991).

Here, Jessen does not show that dismissal is appropriate under the Court's supervisory powers.  First, as discussed above, there is no basis for the Court to conclude that the United States' conduct is outrageous in violation of his Due Process rights; Jessen does not assert any other Constitutional or statutory violation.  Second, Jessen does not present any facts showing that the United States' conduct impairs the Court's integrity as an independent body.  Finally, there are no allegations of illegal conduct by the United States or its agent.  Thus, the Court concludes that the sum of the United States' conduct towards Jessen does not amount to conduct that requires the "drastic remedy" of dismissing the Indictment.  United States v. Bolain, 933 F.2d at 1019.

**IT IS ORDERED** that: (i) the Defendant Paul Jessen's Motion for a Bill of Particulars, filed June 14, 2025 (Doc. 39), is granted in part and denied in part; (ii) the United States shall file a bill of particulars identifying the specific Grand Jury investigation that Jessen allegedly obstructs; and (iii) the Defendant Paul Jessen's Motion to Dismiss Indictment for Outrageous Government Conduct and Violation of Defendant's Fifth and Fourteenth Amendment Rights of Due Process, filed June 16, 2025 (Doc. 40), is denied.

_____
UNITED STATES DISTRICT JUDGE

Chad E. Meacham
   Acting United States Attorney
Sean M. Long
   Assistant United States Attorney
United States Attorney's Office
Lubbock, Texas

   *Attorneys for the Plaintiff*

Joel R. Meyers
Law Office of Joel R. Meyers
Santa Fe, New Mexico

-- and --

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorneys for the Defendant*