IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                  No. CR 24-1346 JB

PAUL JESSEN, JR.,

   Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on Defendant Paul Jessen's Motion to Dismiss Counts 1, 2, and 3 of the Indictment, filed January 8, 2026 (Doc. 70)("2nd MTD").  The Court holds a hearing on March 23, 2026.  <u>See</u> Clerk's Minutes at 1, filed March 23, 2026 (Doc. 89). The primary issues are: (i) whether the Court should dismiss Count 2 of the Indictment, filed September 24, 2024 (Doc. 1), based on Defendant Paul Jessen's argument that his conduct does not fall within 18 U.S.C. § 1512(c)(2)'s provisions, because he claims to not have impaired the availability or integrity of records, documents, or objects; (ii) whether the Court should dismiss Count 2 of the Indictment based on Jessen's argument that he is not on notice that his conduct violates the law; (iii) whether the Court should dismiss Count 2 of the Indictment based on Jessen's argument that a rational juror cannot conclude that a Grand Jury investigation is foreseeable to Jessen; and (iv) whether the Court should dismiss Counts 1 and 3 of the Indictment based on Jessen's argument that the conspiracy and aiding/abetting charges cannot stand if the Court dismisses Count 2.  The Court concludes that: (i) the Court does not dismiss Count 2 of the Indictment based on Jessen's argument that his conduct does not fall within § 1512(c)(2), because the parties dispute operative facts; (ii) the Court does not dismiss Count 2 of the Indictment based on Jessen's argument that he is not on notice that his conduct violated the law, because 18 U.S.C.

§ 1512(c)(2) is not unconstitutionally vague; (iii) the Court does not dismiss Count 2 of the Indictment based on Jessen's argument that the Grand Jury investigation is not foreseeable, because that is an issue reserved for the jury; and (iv) the Court does not dismiss Counts 1 and 3 of the Indictment based on Jessen's argument that the conspiracy and aiding/abetting charges cannot stand if Count 2 is dismissed, because the Court does not dismiss Count 2. The Court therefore denies the 2nd MTD.

## FACTUAL BACKGROUND

The Court takes its background facts from the Defendant's Motion to Dismiss Indictment for Outrageous Government Conduct and Violation of Defendant's Fifth and Fourteenth Amendment Rights of Due Process, filed June 16, 2025 (Doc. 40)("1st MTD"). It recites them solely for context and not as findings of fact. The Court does not determine the truth of these facts.

On July 8, 2021, members of the Federal Bureau of Investigation's Violent Gang Task Force -- including Bernalillo County Sheriff's Office ("BCSO") Deputies Jessen and Kyle Linker, and FBI Agent Bryan Acee -- execute a search warrant at R.W.'s residence. 1st MTD at 2-3. During the search, officers recover narcotics. See 1st MTD at 3. Following the search, R.W. agrees to cooperate with law enforcement and begins working as a confidential informant for the BCSO. See 1st MTD at 3.

In the fall of 2021, task force officers and DEA agents begin investigating a suspected drug trafficker, Ada Chouinard. See 1st MTD at 3. On November 15, 2021, an undercover DEA task force officer conducts a controlled purchase of narcotics from Chouinard. See 1st MTD at 3. DEA agents plan a second controlled buy for November 17, 2021. See 1st MTD at 3. Before the transaction, the agents contact Linker to conduct a deconfliction check[1] to ensure no overlapping

---

[1] "*Event deconfliction* is the process of determining when law enforcement personnel are conducting an event in close proximity to one another at the same time. Events include law

operations are occurring in the area.  See 1st MTD at 3.  The November 17, 2021, controlled buy proceeds as planned.  See 1st MTD at 2-3.

DEA agents organize a third controlled purchase for November 23, 2021.  See 1st MTD at 3.  Before that buy, the agents again contacted Linker for deconfliction.  See 1st MTD at 2-3.  After receiving the call, Linker contacts R.W., and warns him that the DEA is monitoring him and planning another controlled purchase.  See 1st MTD at 2-3.  Acting on this information, R.W. -- who oversees Chouinard's drug distribution -- cancels the transaction that Chouinard has arranged with undercover DEA officers.  See 1st MTD at 3.

Suspecting that Linker has disclosed sensitive information, DEA investigators obtain cellular telephone toll records for both R.W. and Chouinard, which reveal frequent communication between Linker and R.W.  See 1st MTD at 4.  Based on that information, investigators secure a search warrant for R.W.'s residence.  See 1st MTD at 4.  When the DEA agents execute the warrant on December 16, 2021, agents seize methamphetamine and firearms.  See 1st MTD at 4.  During questioning, R.W. admits that Linker warns him about the DEA investigation in November 2021.  See 1st MTD at 4.  R.W. then agrees to serve as a DEA informant in an investigation into Linker's disclosure of confidential information.  See 1st MTD at 4.

At the DEA's direction, R.W. places several recorded calls to Linker.  See 1st MTD at 4.  In these calls, Linker confirms that DEA agents are investigating R.W., advises him to shut down his operations, and tells him to maintain a low profile.  See 1st MTD at 4.  Linker also instructs

---

enforcement actions, such as undercover operations, surveillance, and executing search warrants. When certain elements (e.g., time, date, location) are matched between two or more events, a conflict results. Immediate notification is made to the affected agencies or personnel regarding the identified conflict."  What is Event Deconfliction?, Department of Justice Office of Justice Programs, https://ncirc.bja.ojp.gov/event-deconfliction (last visited November 3, 2025).

R.W. not to contact him for a while to avoid detection and tells him to reach out to Jessen instead if he needs assistance.  See 1st MTD at 4.

Between December 27, 2021, and January 5, 2022, acting under DEA supervision, R.W. sends ten text messages and places two telephone calls to Jessen.  See 1st MTD at 4.  On January 4, 2022, at the DEA's direction, R.W. sends Jessen a message stating: "Hey what's going on I'm being threatened here man they got a hit on me and I don't know what the fuck to do give me a call please."  1st MTD at 4.  Later that day, R.W. sends another message: "Hey what's going on this is Rod, word on the street is that there is a hit on me I don't know what the fuck to do give me a call please."  1st MTD at 4.  Jessen replies: "I'll give you a call tomorrow morning."  1st MTD at 4.

On January 5, 2022, Jessen calls R.W.  See 1st MTD at 4.  During the call, they agree to meet in person the following day.  See 1st MTD at 4.  The meeting occurs on January 6, 2022.  See 1st MTD at 4.

## PROCEDURAL BACKGROUND

On September 24, 2024, the Grand Jury returns a five count Indictment against Jessen.  See Indictment at 1, filed September 24, 2024 (Doc. 1).  Count 1 charges Jessen with conspiring to obstruct a Grand Jury investigation in violation of 18 U.S.C. § 1512(c)(2).  See Indictment at 1. Count 2 charges Jessen with obstructing a Grand Jury investigation on November 23, 2021, in violation of 18 U.S.C. § 1512(c)(2). See Indictment at 2.  Count 3 charges Jessen with obstructing a Grand Jury investigation on December 16, 2021, in violation of 18 U.S.C. § 1512(c)(2).  See Indictment at 3.  Count 4 charges Jessen with making false statements to the FBI on January 20, 2022, specifically, that Jessen has no personal knowledge that Linker obstructs the DEA investigation of R.W.  See Indictment at 2.  Count 5 charges Jessen with making false statements

to the FBI on March 22, 2022, by denying that he is present for the telephone conversation between Linker and R.W.  See Indictment at 3.

On January 8, 2026, Jessen files the 2nd MTD, requesting that the Court dismiss Counts 1, 2, and 3 of the Indictment.  See 2nd MTD at 1.  Jessen first argues that the Court should dismiss Count 2 of the Indictment, because based on the Supreme Court of the United States' decision in Fischer v. United States, 603 U.S. 480 (2024)("Fischer"), Jessen's conduct does not fall within 18 U.S.C. § 1512(c)(2)'s provisions.  2nd MTD at 1.  Jessen next argues for the dismissal of Count 2 of the Indictment, because, under the void-for-vagueness doctrine, Jessen is not on notice that his conduct violates the law.  See 2nd MTD at 9.  Jessen also contends that the Court should dismiss Count 2 of the Indictment, because the United States never conducts a Grand Jury Investigation into R.W.; therefore, a rational juror cannot find that a Grand Jury Investigation is foreseeable. See 2nd MTD at 10.  Finally, Jessen argues that the Court should dismiss the Indictment's Counts 1 and 3, because if the Court dismisses the underlying substantive criminal offense in Count 2, the Court also must dismiss the conspiracy and aiding/abetting charges.  See 2nd MTD at 12.

On January 22, 2026, the United States files the Government's Response to Defendant's Motion to Dismiss Counts 1, 2, and 3 (Doc. 75)("Response").  The United States argues that Jessen impermissibly argues for Counts 1, 2, and 3 to be dismissed, because Jessen asks the Court to assess the legal sufficiency of the United States' evidence before trial.  See Response at 1.  The United States contends that it is improper for the Court to assess the sufficiency of the United States' evidence, because underlying facts are disputed.  See Response at 2.  As for Jessen's argument that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague, the United States responds that

the Supreme Court in <u>Fischer</u> rebuffs Jessen's position by tethering § 1512(c)(2)'s "otherwise" provision to the offenses that § 1512(c)(1) specifically enumerates.  Response at 3.

On February 5, 2026, Jessen files the Reply to Response to Paul Jessen's Motion to Dismiss (Doc. 78)("Reply").  In the Reply, Jessen argues that the Court should dismiss Count 2, because the United States makes no allegation that Jessen impairs the availability of records, documents, or objects for use in an official proceeding.  <u>See</u> Reply at 2.  Further, Jessen contends that alerting a suspect to an investigation, without more, is not a § 1512(c)(2) violation.  <u>See</u> Reply at 3.

## LAW REGARDING MOTIONS TO DISMISS IN CRIMINAL CASES

The Federal Rules of Criminal Procedure contain no analog for summary judgment under rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>United States v. China Star, Inc.</u>, 375 F. Supp. 2d 1291, 1293 (D.N.M. 2005)(Browning, J.)("Under Tenth Circuit law, the Court is not free to determine, like on a motion for summary judgment under the Federal Rules of Civil Procedure, whether a genuine issue of material fact exists.").  "Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."   <u>United States v. Hall</u>, 20 F.3d 1084, 1087 (10th Cir. 1994)("<u>Hall</u>").  When testing an indictment's sufficiency before trial, an indictment's allegations are taken as true, and courts should not consider evidence outside of the indictment.  <u>See</u> <u>Hall</u>, 20 F.3d at 1087.   <u>See also</u> <u>United States v. Tafoya</u>, 376 F. Supp. 2d 1257, 1260 (D.N.M. 2005)(Browning, J.).  Accordingly an indictment is legally sufficient so long as it:

> (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense.

<u>Hall</u>, 20 F.3d at 1087.  The Tenth Circuit has, however, carved out an exception to that general rule for cases "where the underlying facts [are] essentially undisputed and the government fail[s] to

object to the district court's resort to evidence beyond the four corners of the indictment." Hall, 20 F.3d at 1087. "Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt." Hall, 20 F.3d at 1088 (emphasis in original).

The Federal Rules of Criminal Procedure permit defendants, however, to assert defects other than evidentiary insufficiency before trial, because rule 12(b) allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). See Fed. R. Crim. P. 12(b)(1) Advisory Committee Note to 2014 Amendments ("The more modern phrase 'trial on the merits' is substituted for the more archaic phrase 'trial of the general issue.' No change of meaning is intended." (no citation for quotation)). That "Rule 47 applies to a pretrial motion," Fed R. Crim. P. 12(b)(1), means that the Court may consider evidence outside of the indictment, see Fed. R. Crim. P. 47(d) ("The moving party must serve any supporting affidavit with the motion. A responding party must serve any opposing affidavit at least one day before the hearing, unless the court permits later service."). On the other hand, rule 47(d) does not permit courts to conduct a "trial on the merits," Fed. R. Crim. P. 12(b)(1), via motion practice, because

> [t]he last sentence providing that a motion may be supported by affidavit is not intended to permit 'speaking motions' (e.g. motion to dismiss an indictment for insufficiency supported by affidavits), but to authorize the use of affidavits when affidavits are appropriate to establish a fact (e.g. authority to take a deposition or former jeopardy).

Fed R. Crim. P. 47 Advisory Committee's Note to 1944 Adoption.

A court can determine a pretrial motion without a trial on the merits when a motion goes to "what evidence might be admitted at trial . . . or the conduct of and preparation for trial." United States v. Pope, 613 F.3d 1255, 1260 (10th Cir. 2010)(Gorsuch, J.). Pretrial motions that "seek and result in dismissal of the case altogether but that can be decided, at least in the circumstances of

the case at hand, without deciding any disputed questions of fact about the circumstances of the alleged crime" -- i.e., motions that "involve only the taking of evidence that is 'entirely segregable from the evidence to be presented at trial'" -- also qualify under rule 12(b)(1).  United States v. Pope, 613 F.3d at 1260 (quoting United States v. Barletta, 644 F.2d 50, 58 (1st Cir. 1981)).  See United States v. Olivas-Perea, 297 F.Supp.3d 1191 (D.N.M. 2017)(Browning, J.)("To decide the MTD, the Court needs to determine only when, not whether, Olivas-Perea was found in the United States, so the Court faces a factual dispute that is peculiar to the MTD, and does not go to Olivas-Perea's guilt or innocence.").  Similarly, courts "may entertain motions that require it to answer only pure questions of law."  United States v. Pope, 613 F.3d at 1260.

The "most prominent" reason for that rule is "respect for the role of the jury."  United States v. Pope, 613 F.3d at 1259.  The jury is charged with determining a defendant's guilt or innocence, so fact-finding "based on evidence that goes to this question can risk trespassing on territory reserved to the jury."  United States v. Pope, 613 F.3d at 1259.  Criminal defendants are entitled to "'a jury determination that [they are] guilty of every element of the crime with which [they are] charged, beyond a reasonable doubt.'"  Apprendi v. New Jersey, 530 U.S. 466, 477 (2000)(quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)).  That entitlement extends to so-called "sentencing factors," i.e., facts, "[o]ther than the fact of a prior conviction," that increase "the penalty for a crime beyond the prescribed statutory maximum."  Apprendi v. New Jersey, 530 U.S. at 490.

### LAW REGARDING A STATUTE BEING VOID FOR VAGUENESS

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort."  Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998).  "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  United States v. Williams, 553 U.S. 285, 304 (2008).  "A statute

can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  Hill v. Colorado, 530 U.S. 703, 732 (2000)(citing Chicago v. Morales, 527 U.S. 41, 56-57 (1999)).  See United States v. Williams, 553 U.S. at 304 (describing a vague statute as failing "to provide a person of ordinary intelligence fair notice of what is prohibited, or [as being] so standardless that it authorizes or encourages seriously discriminatory enforcement."); Mini Spas, Inc. v. South Salt Lake City Corp., 810 F.2d 939, 942 (10th Cir. 1987)("A statute violates due process if it is so vague that a person of common intelligence cannot discern what conduct is prohibited, required, or tolerated.").  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  United States v. Williams, 553 U.S. at 306.  The Supreme Court notes that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  United States v. Williams, 553 U.S. at 304 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).

In Grayned v. City of Rockford, 408 U.S. 104 (1972), the Supreme Court states that, when assessing whether a statute is vague, it looks to "the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it."  408 U.S. at 110.  For example, in Minority Television Project Inc. v. F.C.C., No. C-06-02699, 2007 WL 4570293, at *1 (N.D. Cal. December 21, 2007)(Laporte, J.), aff'd, 475 F. App'x 671 (9th Cir. 2012), on reh'g en banc, 736 F.3d 1192 (9th Cir. 2013), and aff'd, 736 F.3d 1192 (9th Cir. 2013), the Honorable Elizabeth D. Laporte, United States District Judge for the Northern District of California, concludes that it is premature to dismiss a facial challenge of void for vagueness until the plaintiffs

introduced evidence of the Federal Communication Commission's enforcement decisions applying the statute in question -- a prohibition against certain paid promotional advertisements.  See 2007 WL 4570293, at *9.  When the plaintiffs submit evidence of the FCC's enforcement, Judge Laporte concludes that the statute is not unconstitutionally vague, explaining:

> Assuming that the Court may "perhaps to some degree" consider the FCC's interpretation of the statute in evaluating whether the statute is vague, see Grayned v. City of Rockford, 408 U.S. 104, 110 (1972), as Plaintiff urges the Court to do, arguable inconsistencies in a statute's application in a handful of cases do not condemn a statute.  If such limited inconsistencies rendered statutes unconstitutionally vague, the majority of statutes would probably not survive a vagueness challenge.  Rather, "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'"  California Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1151 (9th Cir. 2001)(quoting Hill v. Colorado, 530 U.S. 703, 733 (2000)(rejecting vagueness challenge)(quotation marks omitted)).  As in Grayned, the words of the statute here are marked by "flexibility and reasonable breadth, rather than meticulous specificity," and "it is clear what the ordinance as a whole prohibits."  408 U.S. at 110 (quoting Esteban v. Central Missouri State College, 415 F.2d 1077, 1088 (8th Cir. 1969)).

Minority TV Project Inc. v. FCC, 649 F. Supp. 2d at 1047.  The Supreme Court in Grayned v. City of Rockford notes: "Condemned to the use of words, we can never expect mathematical certainty from our language."  408 U.S. at 110.  The Supreme Court rejects a facial vagueness challenge to an ordinance that implicates First Amendment rights, and prohibits certain demonstrations "adjacent" to schools that "disturb[ ] or tend[ ] to disturb the peace or good order of such school session or class thereof," finding that it is "clear what the ordinance as a whole prohibits," even though the statute at issue does not specify the prohibited quantum of disturbance.  408 U.S. at 109-11 ("Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted.").  Numerous statutes have withstood facial vagueness challenges even though they contain arguably ambiguous language.  See Hill v. Colorado, 530 U.S. at 732 (rejecting vagueness challenge to ordinance making it a crime to "approach" another

person, without that person's "consent," to engage in "oral protest, education, or counseling" within specified distance of health-care facility); Boos v. Barry, 485 U.S. 312, 332 (1988)(rejecting vagueness challenge to ordinance interpreted as regulating conduct near foreign embassies "when the police reasonably believe that a threat to the security or peace of the embassy is present"); Cameron v. Johnson, 390 U.S. 611, 616 (1968)(rejecting vagueness challenge to ordinance prohibiting protests that "unreasonably interfere" with access to public buildings); Kovacs v. Cooper, 336 U.S. 77, 79 (1949)(rejecting vagueness challenge to sound ordinance forbidding "loud and raucous" sound amplification).

## ANALYSIS

The Court denies the 2nd MTD. First, the Court concludes that Jessen's argument that the Court should dismiss Count 2 because his conduct does not fall within § 1512(c)(2), is incorrect, given that operative facts are in dispute. Second, the Court concludes that Jessen's argument that the Court should dismiss Count 2, because he is not on notice that his conducted violates the law, is incorrect, because § 1512(c)(2) is not unconstitutionally vague. Third, the Court concludes that Jessen is not entitled to Count 2's dismissal based on his argument that the grand jury investigation is not foreseeable, because that is an issue for the jury. Fourth, the Court concludes that Jessen's argument that the Court should dismiss Counts 1 and 3, because conspiracy and aiding/abetting charges cannot stand if the Court dismisses Count 2 is faulty, because the Court does not dismiss Count 2.

I.     **THE COURT DOES NOT DISMISS THE INDICTMENT'S COUNT 2 BASED ON JESSEN'S ARGUMENT THAT HIS CONDUCT DOES NOT FALL WITHIN § 1512(C)(2), BECAUSE THE OPERATIVE FACTS ARE IN DISPUTE.**

Jessen first argues that the Court should dismiss the Indictment's Count 2 based on the Supreme Court's holding in Fischer, because Jessen's alleged conduct falls outside of § 1512(c)(2)'s scope. See 2nd MTD at 4. Jessen contends that Fischer stands for the proposition

that § 1512(c)(2) requires that the United States establish that the defendant "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding." See 2nd MTD at 4 (quoting Fischer, 603 U.S. at 498). Jessen argues that his alleged conduct -- alerting a Grand Jury investigation target -- falls outside of § 1512(c)(2)'s scope as Fischer defines. See 2nd MTD at 4. The United States responds that Jessen's argument impermissibly asks the Court to assess the legal sufficiency of the United States' evidence before trial, because the parties dispute the underlying facts and the United States objects to the Court resorting to evidence beyond the Indictment's four corners. See Response at 2. The Court agrees with the United States that the Court should not dismiss Count 2, because the parties dispute the underlying facts and because the United States objects to the Court resorting to evidence beyond the Indictment.

Generally, a pretrial motion may not challenge the strength or weakness of the United States' case, or the sufficiency of the United States' evidence to support a charge. See Hall, 20 F.3d at 1087. The Court should test an indictment solely on the basis of the allegations the Grand Jury makes on the Indictment's face, and the Court should take as true such allegations. See Hall, 20 F.3d at 1087. Courts should refrain from considering evidence outside the indictment when testing the Indictment's legal sufficiency. See Hall, 20 F.3d at 1087. Notwithstanding this general principle, the Tenth Circuit upholds pretrial dismissals based on the insufficiency of the evidence where two elements are present: (i) the underlying facts are essentially undisputed; and (ii) the United States does not object to the district court's resort to evidence beyond the indictment's four corners. See Hall, 20 F.3d at 1087. The Tenth Circuit notes that a scenario where pretrial dismissal

is appropriate is not likely to occur, and it "caution[s] both the trial courts and counsel that the procedure here employed is indeed the rare exception." Hall, 20 F.3d at 1087.

Confronting this burdensome test head-on, Jessen argues that the Court should dismiss Count 2, because the United States does not allege that Jessen "took any action with respect to documents, records, or other objects, nor that he impaired the availability or integrity of any evidence." 2nd MTD at 4. Jessen asserts that the Court may assess the sufficiency of the United States' evidence, because it is undisputed that Jessen takes no action with respect to documents, records, or other objects. See Reply at 2. The United States disagrees that it does not dispute this fact. See Response at 2 ("Jessen argues he did not take 'any action with respect to a document, record, or other object' and that he 'did not impair the integrity or availability of evidence;' the government asserts that he did.").[2] Given that the parties disagree whether Jessen took any action

---

[2] Although the Court does not assess the sufficiency of these facts under the Fischer framework -- because genuine disputes remain regarding both their occurrence and Jessen's mental state, see March 23, 2026 Transcript at 36:1-25 ("March 23, 2026 Tr.")(Court, Long) -- the record contains several facts supporting the United States' position that there is a dispute whether Jessen impairs or attempts to impair the availability or integrity of records, documents, or other materials used in an official proceeding, including Grand Jury proceedings.

First, the United States argues that, on December 16, 2021, Jessen intends to impair the availability of such materials when he texts Linker: "Tell R.W. not to sell to anyone. And go to a hotel or stay with someone else for a bit." Government's Response to Defendant's Motion to Dismiss for Outrageous Government Conduct at 6, filed June 30, 2026 (Doc. 44)("1st Response"). According to the United States, Jessen sends this message after learning that the DEA is about to search R.W.'s house, evidencing an effort to interfere with the availability of relevant materials. See 1st Response at 6.

The United States further argues that Jessen seeks to impair the integrity of records by manipulating telephone logs to avoid detection and to create plausible deniability. See 1st Response at 6. The following exchange illustrates that effort:

> Linker:  What I should do i[s] have you call R.W. [T]hat way[,] when they ultimately say I tipped R.W. off[,] I can show them my call logs and be like[:] I haven't talked to him since that morning.
>
> Jessen:  I'll fucking do it. I still have his number.

with respect to a document, record, or other object, there is a fact dispute. Given this fact dispute, the Court may not assess the sufficiency of the United States' evidence. See Hall, 20 F.3d at 1087. For this reason, dismissal of Count 2 is not appropriate at this stage.

A criminal defendant, like Jessen, does not have to put on any evidence or testify. See United States v. Gomez-Olivas, 897 F.2d 550, 503-04 (10th Cir. 1990). Thus, unless Jessen wishes to stipulate to facts, the United States has the burden of proving every fact beyond a reasonable doubt that is essential to establish the elements of the crimes charged. At the present time, the Court must assume that every fact -- the ones in the Indictment and the extrinsic evidence -- is disputed. Absent stipulations, the Court cannot find or assume there to be any undisputed facts.

In addition to the essential fact dispute, the Court should not dismiss Count 2, because the United States objects to the Court resorting to evidence beyond the four corners of the Indictment. See Hall, 20 F.3d at 1087; Response at 2. The United States argues that "the legal sufficiency of the government's evidence can be properly addressed by the Court after the government closes its evidence at trial." Response at 2-3. The Court agrees that pretrial is not the proper time to assess the sufficiency of the United States' evidence. Jessen's argument is more appropriate after the

---

| Linker: | Perfect. Plausible deniability for me because you know that's 100% what they going to say. |
| Jessen: | Yup! . . . I'll call him at OS. I'm stuck doing a fed complaint now. |

1st Response at 6. Linker later messages R.W. that "my buddy PJ [Jessen] and I are gonna call you from his phone," and then uses Jessen's phone to place the call. 1st Response at 6.

The Court notes that the United States may have additional evidence bearing on this issue and does not determine that these facts satisfy Fischer's requirements; rather, these facts are sufficient to create a factual dispute such that the United States may present its case-in-chief. Taken together, these facts create a genuine dispute whether Jessen acts to impair the availability or integrity of records, documents, or other materials used in an official proceeding.

United States puts on its case-in-chief. At that moment, Jessen may move for a directed verdict of acquittal based on his interpretation of <u>Fischer</u>. The Court therefore denies the 2nd MTD insofar as it requests that the Court dismiss Count 2 based on the Supreme Court's holding in <u>Fischer</u>.

**II.    THE COURT DOES NOT DISMISS COUNT 2 BASED ON JESSEN'S ARGUMENT THAT HE IS NOT ON NOTICE THAT HIS CONDUCT VIOLATES THE LAW, BECAUSE § 1512(C)(2) IS NOT UNCONSTITUTIONALLY VAGUE.**

Jessen next contends that allowing the United States' case to proceed violates the void-for-vagueness doctrine. <u>See</u> 2nd MTD at 9. Jessen argues that allowing the United States to prosecute Jessen "under the 'otherwise' provision of Section (c)(2) amounts to selective and arbitrary enforcement of any conduct prosecutors deem obstructive while still being contrary to the holding in <u>Fischer</u>." 2nd MTD at 10. According to Jessen, "disregarding the holding in <u>Fischer</u> would violate Jessen's rights under the Due Process Clause of the Fifth amendment. . . ." 2nd MTD at 10. The United States counters that the Supreme Court's holding in <u>Fischer</u> rebuffs Jessen's position regarding § 1512(c)(2), because the Supreme Court tethers the "otherwise" provision of (c)(2) to the offenses that (c)(1) specially enumerates. <u>See</u> Response at 3. The Court agrees with the United States that § 1512(c)(2) is not unconstitutionally vague.

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." <u>Nat'l Endowment for the Arts v. Finley</u>, 524 U.S. 569, 580 (1998). "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000)(citing <u>Chicago v. Morales</u>, 527 U.S. 41, 56-57 (1999)). <u>See</u> <u>United States v. Williams</u>, 553 U.S. at 304 (describing a vague statute as failing "to provide a

person of ordinary intelligence fair notice of what is prohibited, or [as being] so standardless that it authorizes or encourages seriously discriminatory enforcement."); Mini Spas, Inc. v. South Salt Lake City Corp., 810 F.2d 939, 942 (10th Cir. 1987)("A statute violates due process if it is so vague that a person of common intelligence cannot discern what conduct is prohibited, required, or tolerated.").  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  United States v. Williams, 553 U.S. at 306.  The Supreme Court notes that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  United States v. Williams, 553 U.S. at 304 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).

Jessen's argument centers around his contention that the United States is disregarding the Fischer holding.  See 2nd MTD at 10.  Jessen argues that, if the Court disregards Fischer, § 1512(c)(2) becomes unconstitutionally vague, because it is not clear what conduct contemplates § 1512(c)(2)'s "otherwise" clause.  See 2nd MTD at 10.  This argument is unsound, because the United States is not asking the Court to disregard the Supreme Court's holding in Fischer.  See Response at 3-4.  In fact, the United States agrees with Jessen that, in Fischer, the Supreme Court tethers (c)(2)'s "otherwise" provision to the offenses that (c)(1) specifically enumerates.  See Response at 3.  Based on the Supreme Court's holding in Fischer, the United States contends that it can prove that Jessen took action with respect to a document, record, or other object, or that Jessen impairs the integrity or availability of evidence.  See Response at 2.  As discussed above, the conduct that the United States alleges is in accordance with Fischer's holding.  Accordingly, the Court does not agree with Jessen's argument that § 1512(c)(2) is unconstitutionally vague if

the Court ignores <u>Fischer</u>, because the United States maintains that it can convict Jessen within

<u>Fischer</u>'s parameters.

Although Jessen does not make statutory arguments, looking to the statute, § 1512(c)(2) is

not unconstitutionally vague.  Section 1512 provides, in pertinent part:

> (c)    Whoever corruptly--
>
> (1)    alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2)    otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> Shall be fined . . . or imprisoned not more than 20 years, or both.

18 U.S.C.A. § 1512.  Although at first glance the phrase "otherwise obstructs" in (c)(2) may not

allow a person with ordinary intelligence to understand what conduct it prohibits, the Supreme

Court in <u>Fischer</u> provides guidance.  See <u>Fischer</u>, 603 U.S. at 489-91.  In <u>Fischer</u>, the Supreme

Court tethers (c)(2)'s "otherwise" provision to the offenses that (c)(1) enumerates.  See <u>Fischer</u>,

603 U.S. at 489-91.  "[T]o prove a violation of Section 1512(c)(2), the [United States] must

establish that the defendant impaired the availability or integrity for use in an official proceeding

of records, documents, objects, or as we earlier explained, other things used in the proceeding, or

attempted to do so." <u>Fischer</u>, 603 U.S. at 498.  This reading of (c)(2) avoids criminalizing "a broad

swath of prosaic conduct" and keeps it from being a "coverall statute."  <u>Fischer</u>, 603 U.S. at 496-

497.  It also limits prosecutorial discretion only to those acts that Congress contemplates.  See

<u>Fischer</u>, 603 U.S. at 496-497.  Reading § 1512(c)(2) in the context of <u>Fischer</u>, the Court concludes

that it is not unconstitutionally vague.  See <u>Nat'l Endowment for the Arts v. Finley</u>, 524 U.S. at 580

("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly

and only as a last resort."). The Court therefore denies the 2nd MTD insofar as it relies on § 1512(c)(2) being unconstitutionally vague.

### III.    THE COURT DOES NOT DISMISS COUNT 2 BASED ON JESSEN'S ARGUMENT THAT THE GRAND JURY INVESTIGATION IS NOT FORESEEABLE, <u>BECAUSE THAT IS AN ISSUE FOR THE JURY</u>.

Jessen next argues that the Court must dismiss Count 2, contending that no rational juror can find that a Grand Jury investigation was foreseeable to him, because no such investigation ever occurred. See 2nd MTD at 10. Jessen maintains that the United States' reliance on <u>United States v. Ahrensfield</u>, 698 F.3d 1310 (10th Cir. 2012)("<u>Ahrensfield</u>"), is misplaced, because, unlike here, the grand jury investigation in <u>Ahrensfield</u> is foreseeable only because one occurs. 2nd MTD at 11. The Court disagrees with Jessen's argument. <u>Ahrensfield</u> does not hold that a Grand Jury investigation must occur; rather, the Tenth Circuit holds that the relevant inquiry is foreseeability. See <u>Ahrensfield</u>, 698 F.3d at 1325.

Under § 1512(c)(2), "the government does not need to prove the defendant knew of the existence of an ongoing official proceeding." <u>Ahrensfield</u>, 698 F.3d at 1324. "Nor does the government need to prove the defendant knew that the official proceeding at issue was a federal proceeding such as a grand jury investigation." <u>Ahrensfield</u>, 698 F.3d at 1324. "Rather, a conviction under the statute is proper if it is foreseeable that the defendant's conduct will interfere with an official proceeding." <u>Ahrensfield</u>, 698 F.3d at 1324.

In <u>Ahrensfield</u>, the defendant's son works at an automobile shop that performs work for the Albuquerque Police Department ("APD"). 698 F.3d at 1314. Law enforcement receives information that the shop is involved in illegal activity, and the FBI and APD begin investigating. See 698 F.3d at 1314. The defendant knows a member of the investigative team and learns sensitive details about the investigation, which he then relays to the shop's owner. See 698 F.3d at 1314. Through existing contacts at APD, the owner informs APD that he is aware of the

investigation.  See 698 F.3d at 1314.  The resulting loss of secrecy ultimately thwarts the investigation.  See 698 F.3d at 1315-16.  The United States charges the defendant with obstruction of justice under § 1512(c)(2), and the jury convicts the defendant of the same.  See Ahrensfield, 698 F.3d at 1324.  On appeal, he argues that the evidence was legally insufficient to establish the elements of the offense, but the Tenth Circuit affirms.  See Ahrensfield, 698 F.3d at 1324.

The Tenth Circuit explains that, on those facts, "a rational juror could likewise conclude the natural and probable effect of disclosing the existence of the ongoing undercover investigation of Car Show to [the owner] was the impede a potential grand jury investigation.  See 698 F.3d at 1325.  The defendant knows several important details about the investigation, including that: (i) state and federal agencies are investigating the shop; (ii) undercover purchases of drugs occurs; (iii) a confidential informant is involved; (iv) a financial investigation into the owner is possible; (v) "something was going down soon"; and (vi) a mechanic is "going away."  698 F.3d at 1325.  From this evidence, the Tenth Circuit concludes that a rational juror can find the required nexus between the defendant's conduct and a potential grand jury proceeding.  See 698 F.3d at 1325.

The key question, then, is not whether a grand jury investigation occurs, but whether the natural and probable result of the defendant's actions is interference with a potential investigation.  See 698 F.3d at 1326.  The defendant's background further supports that nexus: "That commencement of a grand jury proceeding was foreseeable to Defendant is further supported by the government's evidence regarding Defendant's law enforcement experience and law enforcement officers' familiarity with grand jury proceedings."  698 F.3d at 1325.

This case parallels Ahrensfield.  Jessen, like the defendant there, is familiar with law enforcement practices, as Jessen is a police officer.  He is aware that the DEA is investigating conduct involving federal drug crimes.  On these facts, a reasonable juror can conclude that Jessen foresees that tipping off a DEA informant will interfere with a potential Grand Jury proceeding.

- 19 -

See 698 F.3d at 1326.  Accordingly, Jessen's argument -- that a Grand Jury investigation must occur -- misstates the governing standard.  Because a reasonable juror could find that a potential investigation is foreseeable, the issue is for the jury.  The Court therefore denies the 2nd MTD insofar as it relies on the asserted lack of foreseeability.

## IV.    <u>THE COURT DOES NOT DISMISS COUNTS 1 AND 3</u>.

Jessen finally argues that, if the Court dismisses Count 2, it also must dismiss Counts 1 and 3, because the conspiracy and aiding-and-abetting charges cannot stand if the Court dismissed the underlying offense in Count 2.  For the reasons stated above, however, the Court does not dismiss Count 2, and, accordingly, does not dismiss Counts 1 and 3.  The Court therefore denies the 2nd MTD insofar as it seeks dismissal of Counts 1 and 3 based on Count 2's alleged inapplicability.

**IT IS ORDERED** that Defendant Paul Jessen's Motion to Dismiss Counts 1, 2, and 3 of the Indictment, filed January 8, 2026 (Doc. 70), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Chad E. Meacham
  Acting United States Attorney
Sean M. Long
Ryan Redd
  Assistant United States Attorney
United States Attorney's Office
Lubbock, Texas

   *Attorneys for the Plaintiff*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

-- and --

- 21 -

Joel R. Meyers
Law Office of Joel R. Meyers
Santa Fe, New Mexico

     *Attorneys for the Defendant*