**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                  No. CR 24-1346 JB

PAUL JESSEN, JR.,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on (i) Defendant's Motion to Suppress Statement, filed January 8, 2026 (Doc. 68)("1st Motion to Suppress"); and (ii) Defendant's Motion to Suppress Statements Due to Violation to Defendant's Right to Due Process Pursuant to the Fifth Amendment of the United States Constitution, filed March 13, 2026 (Doc. 82)("2nd Motion to Suppress").  The Court holds hearings on March 2, 2026, <u>see</u> Clerk's Minutes at 1, filed March 25, 2026 (Doc. 90), and March 23, 2026, <u>see</u> Clerk's Minutes at 1, filed March 23, 2026 (Doc. 89). The primary issues are: (i) whether Jessen's January 20, 2022, statements to officers should be suppressed pursuant to <u>Garrity v. New Jersey</u>, 385 U.S. 493 (1967)("<u>Garrity</u>"), because the statements were involuntary; (ii) whether Jessen's January 20, 2022, statements to officers should be suppressed pursuant to the Fifth Amendment of the United States Constitution, because the statements were involuntary; and (iii) whether Jessen's cell phone evidence that derives from the January 20, 2022, interview should be suppressed, because physical fruits of involuntary statements cannot be admitted into evidence.  The Court concludes that: (i) it will not suppress Jessen's January 20, 2022, statements to officers based on <u>Garrity</u>, because Jessen gave voluntary statements to the officers; (ii) it will not suppress Jessen's January 20, 2022, statements to officers based on Jessen's Fifth Amendment rights, because, again, Jessen's statements are voluntary; and

(iii) it will not suppress the telephone evidence that the United States derives from Jessen's January 20, 2022, interview, because the telephone evidence is not fruit of the poisonous tree.  The Court therefore denies the 1st Motion to Suppress and the 2nd Motion to Suppress.

## FACTUAL BACKGROUND

Rule 12(d) of the Federal Rules of Criminal Procedure requires that the Court state its essential findings on the record when deciding a motion that involves factual issues.  See Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").  This Memorandum Opinion and Order's findings of fact serve as the Court's essential findings for rule 12(d)'s purposes.  The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a court to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure.  See United States v. Merritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982).  In deciding such preliminary questions, the other Federal Rules of Evidence, except those with respect to privileges, do not bind the Court.  See Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so doing, the court is not bound by evidence rules, except those on privilege.").  Thus, the Court may consider hearsay in ruling on a motion to suppress.  Additionally, the United States Court of Appeals for the Tenth Circuit indicates that the restrictions in the Confrontation Clause of the Sixth Amendment to the Constitution of the United States do not apply to hearsay introduced in suppression hearings, so the Court may consider testimonial statements.  See United States v. Lopez-Carillo, 536 F. App'x 762, 768-69 (10th Cir. 2013)("[T]he Supreme Court has made it clear hearsay is admissible in suppression hearings . . . .  As a result, the restriction in the Confrontation Clause against admission of testimonial statements . . . is not implicated here.")(citing United States v. Matlock, 415 U.S. 164, 172-77 (1974); United States v. Sanchez,

555 F.3d 910, 922 (10th Cir. 2009).  See United States v. Miramontes, 365 F.3d 902, 904 (10th Cir. 2004)).

1.      The Bernalillo County Sheriff's Office ("BCSO") hires Jessen in 2012.  See 1st Motion to Suppress at 2; March 2, 2026, Hearing Transcript at 47:9-12 ("March 2, 2026, Tr.")[1].

2.      Jessen has a bachelors degree from the University of New Mexico.  See Government's Response to Defendant's Motion to Suppress Statement Based on Fifth Amendment Due Process Violations at 3, filed March 18, 2026 (Doc. 84)("2nd Response at 3").

3.      In 2021, Jessen takes on an additional duty of being a task force officer with the Federal Bureau of Investigation.  See Government's Response to Defendant's Motion to Suppress Statement at 1, filed January 22, 2026 (Doc. 74)("1st Response"); March 2, 2026, Tr. at 50:1-4 (Meyers, Jessen).

4.      By late 2021, agents with the FBI and Drug Enforcement Agency ("DEA") confirm that one of Jessen's fellow BCSO deputies, Kyle Linker, is providing sensitive law enforcement information to an informant.  See 1st Response at 1.

5.      Federal agents believe that Jessen might have knowledge about Linker's actions and seek to interview him.  See 1st Response at 1.

6.      On January 20, 2022, Jessen exchanges messages with Philip Russell -- who supervises Jessen's activities as an FBI task force officer -- that state the following:

> Russell:      Hey Paul. This is Philip from FBI. Can you meet at the offsite at noon? Thanks.
>
> Jessen:      Ya sir! I think I can make it. I have 2 prelim hearing this morning at 930 that will hopefully waive.  If they want to go to a hearing I can let you know if it's going to go late.  Unless its urgent then I can get it covered.

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Russell:        Sounds good.  See you at the offsite.  Thanks.

1st Response at 1-2.

7.      Jessen arrives at the FBI off-site, and is greeted by FBI agent Jack Howard.  See 1st Response at 2; See generally Federal Bureau of Investigation Transcript at 2, (dated January 20, 2022), filed January 20, 2026 (Doc. 74-1)("FBI Transcript").

8.      Jessen asks if Russell is available, and Howard indicates that Howard is there on Russell's behalf and asks to speak with Jessen.  See 1st Response at 2; FBI Transcript at 2.

9.      Jessen agrees to speak with Howard, and they enter a nearby unoccupied room.  See 1st Response at 2; FBI Transcript at 2.

10.     Howard starts the interview by telling Jessen: "Yah.  So PJ gotta be straight with you.  You don't have to talk to me."  FBI Transcript at 2.

11.     Howard tells Jessen: "This is not an administrative, this is not compulsory or anything."  FBI Transcript at 2.

12.     Howard then introduces two DEA agents -- Collin Stradling and Kevin Mondragon -- who also present.  See 1st Response at 3; FBI Transcript at 2.

13.     None of the officers display their weapons in the interview.  See 2nd Response at 7; March 2, 2026, Tr. at 125:4-6 (Redd, Stradling).

14.      None of the officers make physical contact with Jessen.  See generally FBI Transcript at 1-32.

15.     Howard interviews Jessen for approximately seventy minutes.  See 1st Response at 3.

16.     At no point does Jessen request counsel or attempt to leave.  See generally FBI Transcript 1-32.

17.     Towards the interview's end, Howard again tells Jessen that the interview relates to a criminal investigation and is not an administrative employment interview:

> Howard:     As far at the, the Bureau, um Security Division is goin to open an inquiry and they'll work an administrative part of it so um, Phil wants you to be over at the office tomorrow at eight and they'll walk you though the security interview part.
>
> Jessen:     Wait, say that again one more time?
>
> Howard:     Security Division for the Bureau.  So you need to be at headquarters office at eight tomorrow, meeting Phil.  He'll walk you through that.  I don't have any role in any of that, it's administrative, I don't know what the if it's a debrief or what they do but I'm sure, they're concerned about your affiliation with Linker at this point.  But I don't know how that plays out.  That's not, all I do is criminal stuff.
>
> Jessen:     You what?
>
> Howard:     Alls I do is criminal stuff.
>
> Jessen:     Okay.
>
> Howard:     I don't have any role in any administrative stuff that happens next so.

1st Response at 3; FBI Interview at 29.

18.     The Grand Jury alleges that Jessen makes certain false statements in the January 20, 2022, FBI interview.  See Indictment, filed September 24, 2024 (Doc. 1).

19.     At the March 2, 2026, hearing, Jessen confirms that he knows that he does not have to answer Howard's questions:

> Long:     So you knew you didn't have to answer any questions?
>
> Jessen:     Yes, sir that's what he said.

March 2, 2026, Tr. at 76:4-6 (Long, Jessen).

**PROCEDURAL BACKGROUND**

On September 24, 2024, the Grand Jury returns a five count Indictment against Jessen. See Indictment at 1. Count 1 charges Jessen with conspiring to obstruct a Grand Jury investigation, in violation of 18 U.S.C. § 1512(c)(2). See Indictment at 1. Count 2 charges Jessen with obstructing a Grand Jury investigation on November 23, 2021, in violation of 18 U.S.C. § 1512(c)(2). See Indictment at 2. Count 3 charges Jessen with obstructing a Grand Jury investigation on December 16, 2021, in violation of 18 U.S.C. § 1512(c)(2). See Indictment at 3. Count 4 charges Jessen with making false statements to the FBI on January 20, 2022, specifically, that Jessen has no personal knowledge that Linker obstructs the DEA investigation of R.W. See Indictment at 2. Count 5 charges Jessen with making false statements to the FBI on March 22, 2022, by denying that he is present for the telephone conversation between Linker and R.W. See Indictment at 3.

On January 8, 2026, Jessen files his 1st Motion to Suppress. See 1st Motion to Suppress at 1. Here, Jessen asks the Court to suppress his alleged involuntary statements in the January 20, 2022, interview. See 1st Motion to Suppress at 1. Jessen argues that the "government's combined use of deceptive tactics, employment-based requirements, a coercive interview environment, and failure to provide adequate constitutional warnings, both individually and taken together, violated fundamental constitutional principles established in Garrity." 1st Motion to Suppress at 1.

On January 22, 2026, the United States files its 1st Response. See 1st Response at 1. The United States responds that the January 20, 2022, interview did not violate Garrity, because Jessen voluntarily attended the interview and gave voluntary statements. See 1st Response at 1. The United States also argues that Garrity is not implicated, because Jessen's employment is not contingent on the January 20, 2022, interview. See 1st Response at 1. Moreover, the United States

contends that <u>Garrity</u> does not apply, because the statements made during the January 20, 2022, interview were false statements that amount to a criminal act.  <u>See</u> 1st Response at 1.

On February 5, 2026, Jessen files his Reply to Response to Paul Jessen's Motion to Suppress (Doc. 79)("1st Reply").  Jessen reiterates that the January 20, 2022, interview was not voluntary, because BCSO regulations require him to cooperate with superiors.  <u>See</u> 1st Reply at 1.  Jessen also contends that United States' argument that <u>Garrity</u> does not apply due to Jessen making false statements that amount to criminal acts is "legally bankrupt," because it undermines <u>Garrity</u>'s purpose, which is to prevent the United States from using any compelled statements against public employees in criminal proceedings.  1st Reply at 4.

On March 12, 2026, Jessen files the 2nd Motion to Suppress.  <u>See</u> 2nd Motion to Suppress at 1.  In the 2nd Motion to Suppress, Jessen first argues that the Court should suppress his statements made in the January 20, 2022, interview as involuntary statements which are the "product of coercion and a violation of his right to due process."  2nd Motion to Suppress at 1.  Jessen contends that, if the Court analyzes the "due process voluntariness test," the Court will conclude that the statements are involuntary and not admit them as evidence.  2nd Motion to Suppress at 1.  Furthermore, Jessen argues that, because the statements he makes in the January 20, 2022, interview are involuntary, the Court must suppress all evidence, including his cellular telephone evidence, that the United States obtains because of Jessen's coerced statements.  <u>See</u> 2nd Motion to Suppress at 1.

On March 18, 2026, the United States files Government's Response to Defendant's Motion to Suppress Statement Based on Fifth Amendment Due Process Violations (Doc. 84)("2nd Response").  Again, the United States argues that the admission of Jessen's statements do not violate his due process rights, because his participation in the January 20, 2022, interview is voluntary.  <u>See</u> 2nd Response at 2.  The United States also contends that the Court should not

suppress Jessen's telephone evidence, because it is not fruit of the poisonous tree.  See 2nd Response at 7-8.

On March 20, 2026, Jessen files Defendant Paul Jessen's Reply to Government's Response to Defendant's Motion to Suppress Statement for Violation of Due Process (Doc. 87)("2nd Reply").  In the Reply, Jessen again walks the Court through the due process voluntariness test, and concludes that the January 20, 2022, interview is not voluntary.

## ANALYSIS

The Court denies the 1st Motion to Suppress and the 2nd Motion to Suppress.  First, the Court does not suppress Jessen's January 20, 2022, statements to agents based on Garrity, because Jessen gives voluntary statements to the agents and Garrity does not apply, thus, not requiring a Garrity warning.  Second, the Court does not suppress Jessen's January 20, 2022, statements to agents based on Jessen's Fifth Amendment rights, because, again, Jessen's statements are voluntary.  Third, the Court does not suppress the telephone evidence that Jessen's January 20, 2022, interview produces, because the telephone evidence is not fruit of the poisonous tree.

## I.   THE COURT DOES NOT SUPPRESS JESSEN'S JANUARY 20, 2022, STATEMENTS BASED ON GARRITY.

Jessen first argues that the Court should suppress the statements he makes to agents during his January 20, 2022, interview, because the agents compel those statements in violation of the Supreme Court's holding in Garrity.  See 1st Motion to Suppress at 1.  Jessen contends that the agents compel his statements, "because they were required by his direct employer, the Bernalillo County Sheriff's Office, as well as the FBI."  1st Motion to Suppress at 2.  According to Jessen, "any refusal to provide a statement would have subjected him to discipline, such as the termination of his employment."  1st Motion to Suppress at 2.  The United States responds that Garrity is inapplicable, because Jessen voluntarily gives statements to agents during the January 20, 2022,

interview.  See 1st Response at 1.  Moreover, the United States argues that, even if the agents compel Jessen's statements, his statements are the criminal acts -- not proof of prior criminal acts -- and therefore the statements fall outside of Garrity's purview.  See 1st Response at 1.  The Court agrees with the United States' argument that Garrity in inapplicable.

In Garrity, the Supreme Court holds that the Fifth Amendment privilege against self-incrimination bars the government from using statements in subsequent criminal prosecution that the government compels under a threat of job loss.  See Garrity, 384 U.S. at 500.  A Garrity warning to an employee informs the employee that he must make a statement or face termination, but that the government cannot use any statement the employee makes in a subsequent criminal prosecution.  See United States v. Slough, 677 F. Supp. 2d 112, 118-19 (D.D.C. 2009)(Urbina, J.). "This means that an individual cannot be discharged simply because he invokes his Fifth Amendment privilege against self-incrimination in refusing to respond; or, conversely, statements coerced by the employee by threat of removal from office in an earlier disciplinary investigation cannot be used in a subsequent prosecution."  United States v. Jianyu Huang, No. CR 12-1246 WJ, 2014 WL 12789662, at 1 (D.N.M. July 9, 2014)(Johnson, J.,)("Huang")(citing Kalkines v. United States, 473 F. 2d 1391, 1393 (Ct. Cl. 1973).  See Grand Jury Subpoenas Dated Dec. 7 and 8, Issued to Bob Stover Chief of Albuquerque Police Department v. United States, 40 F.3d 1096, 1102 (10th Cir. 1994)("Bob Stover")("The second restriction placed on the government in this context is a complete prohibition on the 'use in subsequent criminal proceedings of statements obtained under threat of removal from office . . . .")(quoting Garrity, 385 U.S. at 500).

The inquiry's first step is whether the circumstances implicate Fifth Amendment protections.  Here, FBI and DEA agents conduct Jessen's January 20, 2022, interview, so there is State action.  For the second part of a Garrity analysis, a defendant must show (i) that he subjectively believes that the threat of job loss compels his statements, and (ii) that his belief is

objectively reasonable.  See Huang, 2014 WL 12789662, at 2 (citing United States v. Vangates, 287 F.3d 1315 (11th Cir. 2002).

### A. GARRITY DOES NOT APPLY, BECAUSE THE FBI AND DEA ARE NOT JESSEN'S EMPLOYER AND CANNOT FIRE HIM.

As a preliminary matter, Jessen's Garrity argument is unsound, because Jessen's employer does not conduct the January 20, 2022, interview.  In January 2022, the BCSO employs Jessen.  See 1st Response at 6.  The BCSO does not conduct, however, the January 20, 2022, interview; rather, the FBI conducts the interview at an FBI off-site location.  See 1st Response at 6.  The Tenth Circuit explains that Garrity imposes limits when the government seeks to use an officer's statements in a criminal proceeding that were "'obtained under threat of removal from office.'"  Bob Stover, 40 F.3d at 1102 (quoting Garrity, 285 U.S. at 500).  Here, no evidence shows that the BCSO compels the FBI interview or that Jessen faces the penalty of losing his BCSO job.

Jessen argues that accepting the United States' position -- that Garrity does not apply because FBI and DEA agents, rather than BCSO supervisors, conduct the interview -- creates a "massive constitutional loophole."  1st Reply at 3.  According to Jessen, "under the government's flawed logic, any law enforcement agent could circumvent Garrity simply by having federal agents conduct interviews of local officers, even when those officers are compelled by their employment to participate."  1st Reply at 3.  This argument is not sound for two reasons.  First, the BCSO does not compel Jessen to participate in the FBI interview.  The BCSO policies that Jessen cites list a "chain of command" to whom BCSO officers must respond.  Bernalillo County Sheriff's Department Rules and Regulations at 100-1, filed January 8, 2026 (Doc. 68-2)("BCSO SOP").

None of the BCSO policies that Jessen provides require BCSO officers to comply with outside law enforcement agencies' directives.  Jessen confirms as much at the hearing:

> Long:            So you knew you didn't have to answer any questions?
>
> Jessen:          Yes, Sir that's what he said.

March 2, 2026, Tr. at 76:4-6 (Long, Jessen).  The Court therefore cannot conclude that the BCSO compels Jessen to participate in the January 20, 2022, interview.  Second, FBI agents do not communicate -- explicitly or implicitly -- that the BCSO will fire Jessen if he refuses to participate.  See generally FBI Transcript at 1-32.  Here, the FBI conducts a criminal investigation in coordination with the DEA, see 1st Reply at 3, and agents tell Jessen he does not have to participate.  See FBI Transcript at 2.  These facts do not implicate Garrity.

### B.    JESSEN LACKS A SUBJECTIVE BELIEF THAT THE THREAT OF JOB LOSS COMPELS HIS STATEMENTS.

Although the Court already determines that Garrity does not impose limits on the matter, the Court continues its Garrity analysis and determines that Jessen lacks the subjective belief that the threat of job loss compels his statements.  Jessen contends that he subjectively believes the BCSO will fire him if he refuses to answer questions during the January 20, 2022, interview.  See 1st Motion to Suppress at 8.  He bases that belief on his FBI supervisor in a joint task force summoning him, and on policies requiring obedience to supervisory orders and cooperation with investigations -- particularly given his temporary status as a task force officer.  See 1st Motion to Suppress at 8.  Jessen's argument is not sound.

The "threat of job loss for purposes of the two-prong Garrity test does not merely mean that the defendant believed he was at some heightened risk of the possibility of being fired; rather, it means that the defendant held the belief that he *would be* fired if he declined to make his statement."  Huang, 2014 WL 12789662, at 7 (emphasis in original).  See Bob Stover, 40 F.3d at

- 11 -

1102 ("The second restriction placed on the government in this context is a complete prohibition on the 'use in subsequent criminal proceedings of statements obtained under threat of removal from office . . . .")(quoting Garrity, 385 U.S. at 500).  For example, in Garrity, the State Attorney General investigates police officers, and, in doing so, tells the police officers that they face mandatory removal from office if the police officers do not answer questions.  See 385 U.S. at 671.  Similarly, in Lefkowitz v. Turley, 414 U.S. 70 (1973), the Supreme Court holds that the circumstances implicate Garrity, because the State of New York tells the architects that they will be disqualified as public contractors if they refused to answer questions.  See 414 U.S. at 82. Jessen does not face a similar threat.

Jessen instead relies on BCSO polices to support his argument that agents compel him to give a statement during the January 20, 2022, interview.  See 1st Motion to Suppress at 8.  For example, Jessen cites to BCSO Standard Operating Procedure 109-4(I), that states: "Personnel shall promptly obey all lawful orders of a supervisor or order given via radio."  BCSO SOP at 109-4(I).  Based on this rule, Jessen argues that, because his FBI supervisor asks Jessen to meet at the interview location, Jessen must participate fully in the interview,[2] and a lack of participation leads to "potential direct employee discipline from BCSO."  1st Motion to Suppress at 5-6.  Jessen, however, misunderstands the Garrity standard.

In Garrity, the State Attorney General tells police officers that they would face mandatory removal if the police officers do not answer questions.  See 385 U.S. at 671.  See also Huang, 2014

---

[2] Jessen acknowledges at the hearing that he did not have to participate in the interview:

> Long:        So you knew you didn't have to answer any questions?
>
> Jessen:      Yes, Sir that's what he said.

March 2, 2026, Tr. at 76:4-6 (Long, Jessen).

WL 12789662 at 7 (holding that <u>Garrity</u> requires that the defendant has the belief that he *would be* fired if the defendant declines to make his statement).  Nothing in the BCSO SOP mandates termination for noncompliance.  Nor is it reasonable to infer that any violation of departmental rules results in termination.  Jessen's testimony confirms this point.  He acknowledges that disobeying a supervisor could lead to "a risk of discipline or possible termination."  March 2, 2026, Tr. at 53:1-5.  The perceived possibility of termination does not satisfy <u>Garrity</u>.  Because Jessen believes only that discipline or termination may occur -- not that termination will follow -- he lacks the subjective belief necessary to establish compulsion.

Under Jessen's theory, <u>Garrity</u> applies to almost all employment interactions.  Under Jessen's argument, a supervisor asking an officer to explain a late report or a supervisor questioning a government lawyer about a filing can all assert that their employer compels statements, because each might fear discipline if the employee refused.  The Court concludes that stretches the need for the <u>Garrity</u> warning too broadly.  <u>Garrity</u> draws a line at compelled testimony under threat of certain job loss and is not appropriate in the routine pressures inherent in any hierarchical workplace.  <u>See</u> 385 U.S. at 671 ("The choice given petitioners was either to forfeit their jobs or to incriminate themselves.").

**C.    IT IS NOT OBJECTIVELY REASONABLE FOR JESSEN TO BELIEVE THAT HIS STATEMENTS ARE COMPELLED BY THE THREAT OF JOB LOSS.**

Even if Jessen satisfies the subjective belief prong, his subjective belief is not objectively reasonable.  For starters, that Jessen believes that there is a possibility BCSO will fire him rather than knowing that BCSO will fire him makes it objectively unreasonable for Jessen to believe that the FBI and the circumstances -- by threat of job loss -- compel his statements.

Several statements that the agents make during the January 20, 2022, interview also support the conclusion that Jessen's belief is not objectively reasonable.  Howard starts the interview by

stating: "Yah.  So PJ gotta be straight with you.  You don't have to talk to me."  FBI Transcript at 2.  Jessen responds: "alright."  FBI Transcript at 2.  Howard follows by saying: "I want you to talk to me, I want to find out some backstory on some things but you absolutely do not have to talk to me."  FBI Transcript at 2.  Howard's statements notify Jessen as soon as the interview starts that he may walk out at any time.

From there, Howard tells Jessen that the interview is not an administrative interview and that it is not compulsory.  See FBI Transcript at 2.  Again, in the following exchange, Howard reiterates that the interview relates to a criminal investigation and is not an administrative employment interview:

> Howard:     As far at the, the Bureau, um Security Division is goin to open an inquiry and they'll work an administrative part of it so um, Phil wants you to be over at the office tomorrow at eight and they'll walk you though the security interview part.
>
> Jessen:     Wait, say that again one more time?
>
> Howard:     Security Division for the Bureau.  So you need to be at headquarters office at eight tomorrow, meeting Phil.  He'll walk you through that.  I don't have any role in any of that, it's administrative, I don't know what the if it's a debrief or what they do but I'm sure, they're concerned about your affiliation with Linker at this point.  But I don't know how that plays out.  That's not, all I do is criminal stuff.
>
> Jessen:     You what?
>
> Howard:     Alls I do is criminal stuff.
>
> Jessen:     Okay.
>
> Howard:     I don't have any role in any administrative stuff that happens next so.

1st Response at 3.  Howard's statements would lead a reasonable person to believe that Jessen is participating in a voluntary interview as part of a criminal investigation and is not participating because his employer is threatening him with losing his job.  Howard makes no threat towards

Jessen's job and instead explicitly states that all Howard is doing is "criminal stuff."  1st Response at 3.  This criminal investigation is unlike the one involving the Garrity officers who the State Attorney General tells during the questioning that, if they refuse to answer the questions, the officers will be removed from office.  See 385 U.S. at 671.  See Lefkowitz v. Turley, 414 U.S. at 82 (holding that Garrity is implicated because the State of New York tells architects that they will be disqualified as public contractors if they refuse to answer questions).  Accordingly, based on Howard's statements, the Court concludes that it is not objectively reasonable for Jessen to believe that the threat of job loss compels his statements.

### D.     NEITHER GARRITY NOR THE FIFTH AMENDMENT PROTECTS FALSE STATEMENTS.

Even if the January 20, 2022, interview implicates Garrity, neither Garrity nor the Fifth Amendment provides immunity from subsequent prosecution for making allegedly false statements during a criminal investigation.  See United States v. Veal, 153 F.3d 1233, 1243 (11th Cir. 1998)("Veal"), overruled on other grounds by Fowler v. United States, 563 U.S. 668 (2011).  See also United States v. Devitt, 499 F.2d 135, 142 (1974)(holding that Garrity provides protection for a witness' Fifth Amendment rights, but finds no reason or justification for extending this umbrella of protection to shield a witness against prosecution for knowingly giving false testimony).  Giving a false statement is an independent criminal act that occurs when the individual makes the false statement; "it is separate from the events to which the statement relates, the matter being investigated."  Veal, 153 F.3d at 1243.  As the Eleventh Circuit puts it: "Garrity protection is not a license to lie or to commit perjury."  Veal, 153 F.3d at 1243.

 Here, Count IV charges Jessen with "knowingly and willfully mak[ing] a materially false, fictitious, and fraudulent statement and representation, specifically that he had no personal knowledge that former Bernalillo County Deputy [Kyle Linker] had obstructed the Drug

Enforcement Administration's investigation of R.W.," during Jessen's interview on January 20, 2022. Indictment at 2. Because several statements in the January 20, 2022, interview are the alleged lies, and not potentially incriminating statements about the lie, the Fifth Amendment affords no protection for these statements. Garrity therefore does not apply to those statements. See Veal, 153 F.3d at 1243 ("Garrity protection is not a license to lie or to commit perjury."). The Court therefore denies the 1st Motion to Suppress, because Garrity does not apply to Jessen's January 20, 2022, interview.

## II.    THE COURT DOES NOT SUPPRESS JESSEN'S JANUARY 20, 2022, STATEMENTS TO AGENTS BASED ON JESSEN'S FIFTH AMENDMENT RIGHTS.

Jessen next argues that the Court should suppress his involuntary statements given during the January 20, 2022, interview under the Fifth Amendment. See 2nd Motion to Suppress at 2. According to Jessen:

> agents coerced and involuntarily obtained Jessen's statements by taking advantage of his employment responsibilities to obey his superior, by preying on his obligation to answer questions posed by his supervisors, by not informing him of his *Miranda* or *Garrity* rights, and by essentially restricting his ability to leave the small office where agents had led him.

2nd Motion to Suppress at 2. The United States responds, arguing that the Court should not suppress Jessen's statements during the January 20, 2022, interview, because the statements are voluntarily given. See 2nd Response at 1. The Court agrees with the United States that Jessen's statements during the January 20, 2022, interview are voluntary.

### 1.    Jessen's January 20, 2022, Interview Is Not a Custodial Interrogation.

Although Jessen makes no argument that the January 20, 2022, interview is a custodial interrogation, he argues that the agents obtain his statements involuntarily, in part, because the agents do not inform him of his Miranda rights. See 2nd Motion to Suppress at 3. The Court therefore needs to determine if Jessen's January 20, 2022, interview is a custodial interrogation

such that <u>Miranda</u> warnings are necessary.  The Court concludes that Jessen's January 20, 2022, interview is not a custodial interrogation.

Any law enforcement officer questioning "reasonably likely to elicit an incriminating response" constitutes an interrogation.  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).  In determining an interrogation's custodial nature, the court must "determine whether 'a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest.'"  <u>United States v. Chee</u>, 514 F.3d 1106, 1112 (10th Cir. 2008)(quoting <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984)).  The Tenth Circuit, in recognizing that an examination of the totality of the circumstances is fact intensive, instructs district courts to consider a number of non-exhaustive factors in determining whether a custodial interrogation took place.  <u>See</u> <u>United States v. Jones</u>, 523 F.3d 1235, 1240 (10th Cir. 2008).  Those factors include: (i) whether the government informs the suspect that he or she may end the interview at will or that the suspect does not have to answer questions; (ii) whether the interview's nature is likely to create a coercive environment from which a suspect does not feel free to leave, such as where there is prolonged accusatory questioning; and (iii) whether the police dominate the encounter with the suspect.  <u>See</u> <u>United States v. Jones</u>, 523 F.3d at 1240)(citing <u>United States v. Griffin</u>, 7 F.3d 1512, 1518 (10th Cir. 1993)).  Police domination of the encounter is indicated by: (i) separating the suspect from others who can lend moral support; (ii) isolating the suspect in nonpublic questioning rooms; (iii) multiple officers' threatening presence; (iv) the officer display of weapons; (v) physical contact with the suspect; and (vi) use of language or vocal tones which suggest that compliance with an officer's request is compulsory.  <u>See</u> <u>United States v. Jones</u>, 523 F.3d at 1240.  The Tenth Circuit is deliberate in emphasizing, however, that courts must consider the circumstances surrounding

the police-citizen encounter as a whole, rather than exclusively relying on some enumerated factors while ignoring others.  See United States v. Jones, 523 F.3d at 1240.

As a threshold matter, the January 20, 2022, interview is an interrogation.  Any law-enforcement officers questioning "reasonably likely to elicit an incriminating response" constitutes an interrogation.  Rhode Island v. Innis, 446 U.S. at 301.  During the interview, Howard asks Jessen many questions about Jessen's involvement with Linker tipping off R.W. to a federal investigation.  See FBI Report at 13; id. at 16; id. at 20.  The Court therefore must determine whether the interrogation is custodial.

The Court concludes that the January 20, 2022, interview is not custodial.  The first custodial interrogation factor is whether the government informs the suspect that he or she may end the interview at will or does not have to answer questions.  See United States v. Jones, 523 F.3d at 1240.  Jessen contends that he believes he has to answer questions, because his supervisor directs him to attend the interview and because Howard states, Howard is present in the supervisor's place when the supervisor is absent.  See 2nd Motion to Suppress at 2.  On this basis, Jessen invokes a BCSO policy requiring adherence to the chain of command.  See 2nd Motion to Suppress at 2.  This argument does not persuade the Court.  The record reflects that Howard informs Jessen that the interview is voluntary and that Jessen does not have to answer questions.  See FBI Interview at 2.  Jessen's position rests on an internal inconsistency.  If, as Jessen maintains, Howard stands in the supervisor's place for purposes of the interview, then Howard's statements define the scope of any obligation under the chain of command.  Those statements include an explicit statement that Jessen does not have to participate.  See FBI Interview at 2.  Jessen cannot

rely on Howard's asserted supervisory role to establish compulsion while disregarding the substance of the instructions that accompany that role. Jessen confirms as much at the hearing:

> Long:        So you knew you didn't have to answer any questions?
>
> Jessen:      Yes, sir that's what he said.

March 2, 2026, Tr. at 76:4-6 (Long, Jessen). The Court therefore concludes that Jessen knows that he can refuse to participate, and the first factor weighs against a finding that the interview is custodial.

The second factor is "the nature of the questioning where prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave." United States v. Jones, 523 F.3d at 1240. The Court's review of the FBI Transcript documenting the January 20, 2022, interview, does not reveal any accusatory questioning, but, rather, questioning that sympathizes with Jessen's situation. See FBI Interview at 2 ("I want you to talk to me, I want to find out some backstory on some things but you absolutely do not have to talk to me.")(Howard); id. at 4 ("So I don't know if you're aware of this, an - and let me know if you're not, but [source] was on probation [out of] Texas.")(Howard); id. at 8 (And let, me l-, let me preface with, I , I am very attune to the fact that I'm asking you about another Detective that you work with right . . . . But I'll tell you this, Kyle Linker is not your friend and if you think he is for a moment, what other friend would put you in a situation where you and I are having this conversation?")(Howard); id. at 19 ("I did not put you in this position. I prayed several times that this did not come back to the office or anybody I know and when I found out it did and it was not a happy day."); id. at 29 ("Um obviously not an interaction I ever wanted to have with you, I'm, and I'm sorry we're having it.")(Howard). Indeed, the January 20, 2022, interview does not have

prolonged accusatory questioning, but rather, has questions and statements that sympathize with Jessen's situation. The second factor thus cuts against a custodial interrogation finding.

Finally, the third factor is "whether police dominate the encounter." United States v. Jones, 523 F.3d at 1240. Police domination of the encounter is indicated by: (i) separating the suspect from others who can lend moral support; (ii) isolating the suspect in nonpublic questioning rooms; (iii) multiple officers' threatening presence; (iv) officer display of weapons; (v) physical contact with the suspect; and (vi) use of language or vocal tones which suggest that compliance with the officer's request is compulsory. See United States v. Jones, 523 F.3d at 1240.

Here, the factors are neutral regarding police domination. The first, second and third factors favor police domination. The record reflects that Jessen is separate from others who can lend moral support when Jessen's FBI supervisor asks Jessen to meet him at the FBI off-site. See 2nd Motion to Suppress at 2. The FBI also isolate the suspect in a nonpublic questioning room when Howard asks Jessen to enter a separate office for the interview. See 2nd Motion to Suppress at 3. Finally weighing in favor of police domination is that there were multiple agents in the room during the interview. See 2nd Motion to Suppress at 3.

An equal number of factors, however, cut against police domination. The agents do not display their weapons in the interview. See 2nd Response at 7. The agents do not make physical contact with Jessen. See 2nd Response at 7. The agents use language suggesting that Jessen's participation in the interview is voluntary. See FBI Interview at 2 ("You don't have to talk to me.")(Howard). The Court therefore concludes that the police domination factor is neutral regarding the finding of custodial interrogation, because three of the factors weigh in favor of police domination and three factors weigh against police domination. The Court ultimately concludes, however, that the July 18, 2013, interview is not a custodial interrogation, because the police domination factor is neutral, and two of the three custodial interrogation factors cut against

a custodial finding.  In reaching this conclusion, the Court especially considers the Tenth Circuit's holding that, in determining an interrogation's custodian nature, the Court must "determine whether 'a reasonable person in the suspect's position would have understood the situation as functional equivalent of formal arrest.'"  United States v. Chee, 514 F.3d at 1112 (quoting Berkemer v. McCarty, 468 U.S. at 442).  The Court does not see how a reasonable person -- with Jessen's law enforcement experience -- whom the agents tell does not have to answer the FBI's questions, see FBI Interview at 2, and when the agents do not arrest or handcuff Jessen, see generally FBI Interview at 1-32, "would have understood the situation as the functional equivalent of formal arrest," United States v. Chee, 514 F.3d at 1112.  The Court therefore concludes that the January 20, 2022, interview is not a custodial interrogation.  Because the interrogation is not custodial, FBI agents do not have to read Jessen his Miranda rights.  See United States v. Jones, 523 F.3d at 1239 ("'Miranda applies only to 'custodial interrogation[s].'")(quoting Miranda v. Arizona, 384 U.S. at 444).

**2.      Jessen's Statements During the January 20, 2022, Interview Are Voluntary.**

The Court concludes that Jessen's statements during the January 20, 2022, interview are voluntary.  "The Government bears the burden of showing, by a preponderance of the evidence, that a confession is voluntary."  United States v. Lopez, 437 F.3d 1059, 1063 (10th Cir. 2006).  The key question is whether:

> the confession [is] the product of an essentially free and unconstrained choice by its maker?  If it is, if he has willed to confess, it may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

United States v. Lopez, 437 F.3d at 1063.  The Court "determines the voluntariness of a confession based upon the totality of the circumstances, considering both the characteristics of the accused and the details of the interrogation."  United States v. Lopez, 437 F.3d at 1063.  "No single factor

is determinative." United States v. Lopez, 437 F.3d at 1063. "The United States Supreme Court has identified a non-exhaustive list of facts for assessing the voluntariness of a statement." Sharp v. Rohling, 793 F.3d 1216, 1233 (10th Cir. 2015)(citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). Those factors include "'(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment.'" United States v. Lopez, 437 F.3d at 1063-64 (quoting United States v. Toles, 297 F.3d 959, 965-66 (10th Cir. 2002)).

Jessen's age, intelligence, and education indicate a finding of voluntariness. At the time of the FBI interviews, Jessen is thirty years old and holds a bachelor's degree from the University of New Mexico. See 2nd Response at 3. The Tenth Circuit holds that the first factor indicates a voluntariness finding when the defendant is twenty-one years old and has a GED. See United States v. Toles, 297 F.3d at 966. Jessen therefore is older and more educated than the defendant in United States v. Toles, whom the Tenth Circuit concludes voluntarily participates in the interview. See United States v. Toles, 297 F.3d at 966. Further, Jessen is a deputy with the BCSO, for over eight years. See 2nd Response at 3. This experience as a police officer makes him more educated on the law enforcement investigation process and his rights within it than the average person, thus, supporting a finding of voluntariness. Jessen's argument that his experience as a police officer made him more vulnerable than the average person in unavailing. See 2nd Reply at 1. This argument is Jessen's attempt to reargue the Garrity issue that the Court already denies above. The Court therefore concludes that the first factor indicates voluntariness.

The second factor, "the length of detention," also indicates that Jessen's statements are voluntary. United States v. Lopez, 437 F.3d at 1063-64. The January 20, 2022, interview lasts approximately seventy-minutes. See 2nd Response at 6. The Tenth Circuit rules that a three-hour

interview "was not unduly long." United States v. Rodebaugh, 798 F.3d 1281, 1292 (10th Cir. 2015). The Tenth Circuit also rules that a custody length of five hours "weighs in favor of voluntariness." Sharp v. Rohling, 793 F.3d at 1233. Given Jessen's seventy-minute interview, the Court concludes that the detention-length factor indicates voluntariness.

Regarding the questioning's length and nature, the use of prolonged accusatory questioning from the custodial interrogation analysis is helpful to determine which way this factor cuts. See United States v. Jones, 523 F.3d at 1240. As explained above, Howard does not engage in prolonged accusatory questioning, but, rather, sympathizes with Jessen's situation. See FBI Interview at 2 ("I want you to talk to me, I want to find out some backstory on some things but you absolutely do not have to talk to me.")(Howard); id. at 4 ("So I don't know if you're aware of this, an-and let me know if you're not, but [source] was on probation of out Texas.")(Howard); id. at 8 (And let, me l-, let me preface with, I , I am very attune to the fact that I'm asking you about another Detective that you work with right . . . . But I'll tell you this, Kyle Linker is not your friend and if you think he is for a moment, what other friend would put you in a situation where you and I are having this conversation?")(Howard); id. at 19 ("I did not put you in this position. I prayed several times that this did not come back to the office or anybody I know and when I found out it did and it was not a happy day."); id. at 29 ("Um obviously not an interaction I ever wanted to have with you, I'm, and I'm sorry we're having it.")(Howard). The Court therefore concludes that the third factor indicates voluntariness.

The fourth factor, "whether the defendant was advised of his constitutional rights," United States v. Lopez, 437 F.3d at 1063-64, cuts against voluntariness, because the agent does not read Jessen his Miranda rights. See 2nd Motion to Suppress at 3. This factor is not very strong in this instance, because Jessen's interview is non-custodial, making Miranda warnings unnecessary. Further, Howard tells Jessen that Jessen does not have to participate in the interview. See FBI

Interview at 2.  Nevertheless, this factor is only one among several, and "[n]o single factor is determinative." United States v. Lopez, 437 F.3d at 1063.  The fifth factor, "whether the defendant was subject to physical punishment," United States v. Lopez, 437 F.3d at 1063-64, indicates voluntariness, because nothing in the records suggests that the FBI agents touch Jessen in any way. See 2nd Response at 7.

Four of the five voluntariness factors therefore indicate that Jessen's statements are voluntary.  For the reasons explained above, the Court concludes that Jessen's statements during the January 20, 2022, interview are voluntary, and the interview is not a custodial interrogation. The Court therefore will not suppress Jessen's statements in the January 20, 2022, interview.

The Court has to determine the voluntariness of statements that Navajo men make to FBI agents.  See, e.g., United States v. Yazzie, 998 F. Supp. 2d 1044 (D.N.M. Feb. 6, 2014)(Browning, J.).  The FBI skillfully secures incriminating statements.  These confessions are almost always voluntary, even though the Navajo man is under stress and often is not sophisticated or educated. The Court is reluctant to suppress Jessen's statements when it has not done so in more compelling circumstances.

### III.    THE COURT DOES NOT SUPPRESS THE TELEPHONE EVIDENCE FROM JESSEN'S JANUARY 20, 2022, INTERVIEW.

Jessen's final argument is that "[a]ll evidence derived from Jessen's coerced and involuntary statements must be suppressed, including but not limited to, Jessen's cell phone evidence."  2nd Motion to Suppress at 5.  According to Jessen, because his statements during the January 20, 2022, interview are involuntary, the Court must exclude all fruits of those statements.  See 2nd Motion to Suppress at 5.  As explained above, however, Jessen's statements during the January 20, 2022,

interview are voluntary.  Accordingly, the fruit-of-the-poisonous-tree doctrine does not apply.  The Court therefore denies the 2nd Motion to Suppress.

IT IS ORDERED that: (i) the Defendant's Motion to Suppress Statement, filed January 8, 2026 (Doc. 68), is denied; and (ii) the Defendant's Motion to Suppress Statements Due to Violation to Defendant's Right to Due Process Pursuant to the Fifth Amendment of the United States Constitution, filed March 13, 2026 (Doc. 82), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Chad E. Meacham
  Acting United States Attorney
Sean M. Long
Ryan Redd
  Assistant United States Attorney
United States Attorney's Office
Lubbock, Texas

   *Attorneys for the Plaintiff*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

-- and --

Joel R. Meyers
Law Office of Joel R. Meyers
Santa Fe, New Mexico

   *Attorneys for the Defendant*